[L. A. No. 17548.· In Bank.—February 20, 1941.]

CLIFFORD A. ROHE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Isaac Pacht, Byron C. Hanna and Clore Warne for Petitioner.

Claude Minard for Respondent.

446

THE COURT.—In January, 1939, Clifford A. Rohe, an attorney at law of this state, was notified to appear before Local Administrative Committee Number Seven of the State Bar of Los Angeles County and show cause why he should not be disciplined for professional misconduct arising out of his activities in connection with a claim of his client, Miss Carlotta Monti, against W. C. Fields. The attorney filed an answer to the charges and after hearings the local committee made findings and recommended suspension from practice for a period of three months. After argument before it, the Board of Governors adopted the findings of the local committee and recommended to this court that the attorney be disbarred. The attorney is before this court as petitioner in a proceeding to review the board's recommendation.

The petitioner was born in Cincinnati, Ohio, in 1888, was admitted to the practice of law in Illinois in 1909, and in California in 1912. He is married and is the father of six children. He has practiced law in Los Angeles County since his admission to the bar of this state. The record shows that on September 29, 1936, he received a public reprimand from the Board of Governors of the State Bar. The proceeding in this instance grows out of the following facts:

On October 9, 1937, Miss Carlotta Monti employed the petitioner to press a claim for damages against W. C. Fields for a beating to which he was alleged to have subjected her on the front steps of his residence at Bel Air the preceding night upon their late return from a dinner party. It was agreed between Miss Monti and the petitioner that compensation for legal services in the matter should be contingent upon recovery, and should be an amount equal to 25 per cent of any recovery from Mr. Fields. Negotiations produced an offer of $5,000 from Mr. Fields. This was communicated to Miss Monti, who refused acceptance. Mr. Fields declined to raise his named figure. Subsequently the petitioner informed Miss Monti that Mr. Fields' attorney, Mr. Loyd Wright, had three clients to whom the petitioner owed money on notes and otherwise, aggregating $1300; that these obligations were old and that he believed they could be settled at a considerable discount. He suggested that negotiations through Mr. Fields' attorney be resumed on the basis of including sufficient in his offer to Miss Monti to discharge these obligations of the petitioner. Miss Monti

consented, and the petitioner communicated the suggestion to Mr. Wright. The petitioner thereupon received a letter from Mr. Wright, asking for a release executed by Miss Monti and a letter of authorization appropriate to the terms of the petitioner's suggestion. Thereupon the petitioner signed a letter dated December 9, 1937, to Mr. Wright, containing the following:

"In compliance with the request contained in your letter of the 9th instant, Miss Monti has executed and acknowledged the form of release, and I am enclosing the same which you may use when you deliver $5000.00 to me for Miss Monti, and the Chipron, Donovan Notes marked 'paid' and a receipt from John Rauen.

"This letter will be your authority to use any amount you may have to pay in the adjustment of those three items in excess of the $5000.00 to be paid Miss Monti. . . .

"I shall certainly appreciate it if you will have this concluded during this week as it will be of very material advantage."

Miss Monti signed a letter to Mr. Wright, bearing the same date, stating:

"I have read your letter to Mr. Rohe of the 9th instant, and have also read, signed and acknowledged the form of release which you sent him with that letter, all in connection with the adjustment of my claim against Mr. W. C. Fields.

"You are authorized to use whatever is necessary in excess of the $5000.00 which will be paid me to settle Mr. Rohe's obligation on the $500.00 note to Frank Chipron, $500.00 note to Dick Donovan and $300.00 obligation to John Rauen, making the $5000.00 check directly to me.

"You are also authorized to fill in the blank space on the top line of the release the total amount Mr. Fields must pay in settlement of those obligations of Mr. Rohe, plus the $5000.00 which you pay me; such total amount being the consideration for the release."

These letters and the signed release were forwarded to Mr. Wright. On December 17, 1937, Mr. Wright sent a check for $5,000 to the petitioner with the following letter of transmittal:

"I am enclosing herewith check for $5000.00, made payable to Carlotta Monti, in full payment and liquidation of all claims against Mr. Fields.

"I cannot enclose the notes and the receipt from Mr. Rauen to you personally, because I am just leaving for a stockholders' meeting, but this will acknowledge that I have accepted $6300.00 in complete satisfaction of those items set forth in your letter, and that I will in the next day or two forward you the receipt from Mr. Rauen and the two cancelled notes involved."

In response to the petitioner's call, Miss Monti arrived at his office with her sister, received the check for $5,000 and delivered to the petitioner her check for $1250. The petitioner's testimony was that he exhibited to Miss Monti Mr. Wright's letter of transmittal. That testimony was contradicted by Miss Monti, who claimed that the petitioner told her he had to settle "without the notes."

About December 20, 1937, the petitioner received from Mr. Wright the cancelled notes and the receipt evidencing payment of the petitioner's obligations, with a letter of transmittal which concluded: "We appreciate your cooperation with us concerning the settlement of these matters."

Shortly thereafter Miss Monti and Mr. Fields were reconciled and Miss Monti testified that she then learned for the first time that the settlement figure had been $6,300. She claimed that she telephoned to the petitioner, made some accusations, and that he denied any knowledge that more than $5,000 was received, but stated that he would make inquiry. He thereupon wrote the following letter to Mr. Wright, bearing date December 24, 1937:

"I shall appreciate it if you will let me have a copy of the release which Carlotta signed in the Fields matter, and also advise me what was paid to Donovan, Chipron and Rauen, so that I may have a complete file in the matter. . . ."

The petitioner testified that Miss Monti claimed that more than $6,300 had been received by Mr. Wright, and that the latter had retained the excess. His explanation for couching his letter of December 24th in the language quoted, however, was that he did not want to intimate to Mr. Wright that "I thought he got more than he had told us, that was the reason I mentioned the amount of the notes. I asked for the information so that I would have a complete file."

In response to his request he received the following, dated January 5, 1938, signed by Mr. Wright's brother:

"Last week Loyd asked me to write to you concerning your request as to the amounts which were paid to Donovan, Rauen and Chipron. He was under the impression that you had knowledge of the amounts paid, anyway I forgot to write you at that time.

"We paid Dick Donovan $500, Chipron $500, less $50 attorney's fees, and John Rauen $300.00. These payments were made in full settlement of all of their respective claims against you, and the same were made in accordance with your agreement arising out of the settlement of the alleged claims of your client, *Miss Monti* vs. *W. C. Fields.*"

Miss Monti heard nothing further from the petitioner and in October, 1938, brought the matter to the attention of the State Bar. In the meantime she had filed a civil action against the petitioner to recover 75 per cent of the $1300, which action does not appear to have been prosecuted to judgment.

It was the petitioner's contention during the hearings before the local administrative committee and the Board of Governors, and it is his contention here, that Miss Monti and he had come to an understanding that he should have, in addition to the 25 per cent contingency fee, the benefit of anything in excess of $5,000 which would be necessary to settle the three obligations aggregating $1300. The committee found that the petitioner did not advise Miss Monti, at the time she received from him the $5,000 check, that his obligations had been settled for their face value though he was in receipt of information from Mr. Wright to that effect; that when he wrote the letter of December 24th to Mr. Wright he knew that the full amount of $1300 had been paid in settlement of his obligations. The committee concluded that the petitioner had violated Rule 9 of the Rules of Professional Conduct of the State Bar (prohibiting commingling of client's and personal funds and requiring prompt report of receipt of client's property); that he had violated his oath and duties as an attorney within the meaning of subdivision 2 of section 287 of the Code of Civil Procedure (sec. 6103, State Bar Act), and had committed wrongful acts within the meaning of subdivision 5 of section 287 of the Code of Civil Procedure (sec. 6106, State Bar Act).

In its findings the committee called attention to the fact that the petitioner had stated before it that he was willing to

pay Miss Monti 75 per cent of the $1300, but that he would not do so under compulsion either of the civil action brought by her or of the State Bar proceeding.

In its recommendations the committee expressed its belief that Miss Monti had been willing that the petitioner should include the three obligations in the negotiations for a settlement of her claim against Mr. Fields, and that he should have the benefit thereof without accounting to her, if they could be settled for a small amount; but that the dispute arose over the fact that the petitioner did not fully or fairly advise her of all steps taken in connection with the settlement of his obligations and that had Miss Monti known that as a result of those negotiations he had received more than double the original fee agreed upon, she would not have authorized the liquidation of his obligations in the manner disclosed.

These findings and conclusions, as qualified by the committee's analysis in its recommendations, are supported by the record. This is so even though we consider favorably to the petitioner the collateral matters referred to by him and relied upon as showing a motive to cast discredit upon him by the initiation of proceedings before the State Bar. It is a fact that the events herein were not called to the attention of the State Bar for nearly a year after their occurrence. But it is also a fact that in the meantime Miss Monti had brought a civil action against the petitioner. ██ Whatever may have been the instigating factor, or whatever may have been the personal motive, in the initiation of the State Bar proceeding, are not matters of controlling concern in a case where the facts disclosed independently lead to the conclusion that the attorney is subject to some disciplinary action. There is no showing that any personal motives of individuals have generated any pressure or prejudice or have in any way prevented the petitioner from having full, fair and unbiased hearings. However, we are in agreement with the petitioner that under all the circumstances disbarment is too harsh discipline, and that the ends to be subserved by the proceeding herein will be satisfied by a suspension as recommended by the local committee.

It is ordered that the petitioner, Clifford A. Rohe, be suspended from the practice of the law in this state for a period of three months, beginning thirty days from and after the filing of this order.