[L. A. No. 18843. In Bank. Apr. 20, 1944.]

GEORGE A. PICKERING, Petitioner, v. THE STATE
BAR OF CALIFORNIA, Respondent.

J. Howard Sullivan for Petitioner.

Guy Knupp for Respondent.

THE COURT.—By writ of review, George A. Pickering has challenged the recommendation of the Board of Governors of The State Bar in a disciplinary action.

In an order to show cause, the petitioner was charged with having violated his oath and duties as an attorney at law within the meaning of the Business and Professions Code, as the same are prescribed by sections 6067 and 6068, and committing acts involving moral turpitude, dishonesty and corruption within the meaning of section 6106, in that he prepared, signed and filed a complaint asserting facts he knew to be untrue. The petitioner denied the charges and the matter proceeded to a hearing before a local administrative committee.

The evidence presented in behalf of the complainant was not controverted in any essential particular and shows the following facts:

The petitioner and James F. Norris met in July, 1941. At that time they were both employed by the All State Insurance Company as adjusters. During the remainder of the year, Mr. and Mrs. Pickering often saw Norris and his wife Lynette. The two couples visited in each other's homes.

Lynette Norris was out of the state for the first eight months of 1942. In September, she returned to California and filed suit for divorce. Pickering agreed to represent Norris in that action. When Pickering, in November, 1942, filed an answer on behalf of Norris, he believed that Lynette Norris was the wife of his client. And although from the time of the commencement of the divorce action until a few weeks prior to the hearing of the disciplinary matter by the local committee, Pickering had a number of conversations with Lynette Norris and her attorney relative to a property settlement and the support of the minor children of the marriage, he never questioned her marital status. Apparently he accepted as true the allegation of the divorce complaint, later

established by uncontradicted testimony, that, in 1933, she was married to James Norris and the marriage had never been dissolved.

In April, 1942, during the absence of Lynette Norris in Nebraska, Norris introduced Pickering to Patricia Keller, as she was then known. Two months later Pickering was told by his wife that Patricia Keller and Norris claimed to have been married in Mexico and were then living in San Diego. Pickering saw them on two or three occasions when they returned to Los Angeles for week ends; they then represented to him that they were married. In the early part of December, 1942, Norris enlisted in the United States Army and went to Texas for training.

The present proceeding is based upon the allegations of the complaint to recover damages for personal and other injuries filed by Pickering as the result of an accident which occurred when Patricia Keller was operating the automobile of Norris with Pickering and another as passengers. Because of injuries then sustained by Patricia Norris, the complaint alleged, "James F. Norris, who is the husband of plaintiff, Patricia Norris, was deprived of the services and consortium of his wife for the period of two weeks." According to Pickering's testimony before the committee, at the time he filed this complaint, which was verified by Patricia Keller, under the name of Patricia Norris, before him as a notary public, he doubted that Norris was married to either woman but he considered that Lynette had "the edge" over Patricia. Pickering, however, then knew that James Norris was, and for a time commencing prior to the date of the accident, had been in Texas.

Upon this evidence the committee found that Pickering, at the time of preparing and filing the complaint, was fully informed as to the falsity of its allegations concerning the marital status of Norris. More particularly, said the committee, Pickering knew that at all times mentioned in the complaint the woman referred to as Patricia Norris was not and had not been the wife of Norris. The petitioner also had knowledge concerning the absence of Norris from the state at the time of the accident and until the date the complaint was filed. When Pickering prepared and filed the complaint he knew that Norris was the husband of Lynette C. Norris, whose divorce action was then pending, and that Norris had

not been deprived of the "services and consortium" of his wife or of Patricia Keller, by reason of the asserted accident, nor had he been damaged in any amount. Because of these facts, the findings conclude, Pickering, at the time Patricia Keller verified the complaint before him as a notary public, knew that she swore falsely.

In consonance with these findings, the committee determined that Pickering had violated his oath as an attorney and, as discipline, recommended suspension from practice for a period of eighteen months. The Board of Bar Governors adopted the findings of the local committee but modified the latter's recommendation to suspension for one year.

The petitioner contends that the recommendation of the Board of Governors should be reversed or modified upon the grounds that the findings are outside the allegations of the notice to show cause and insufficient to support a disciplinary action of any kind. The finding as to intended deceit is not supported by the record, he asserts, and in preparing and filing the complaint he had no intention to deceive anyone. He denies that he acted out of malice or for profit, or that anyone was in fact deceived or damaged, and he takes the position that at most he merely violated the marital rights of Lynette Norris, complainant in the disciplinary proceeding, who acted entirely out of spite.

 Section 6103 of the Business and Professions Code provides that any violation by an attorney of his oath or professional duties constitutes cause for suspension or disbarment; and section 6068 of that code prescribes, in part, that it shall be the duty of an attorney "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." The presentation to a court of a statement of fact known to be false presumes an intent to secure a determination based upon it and is a clear violation of the quoted provision. The charges against Pickering alleging such conduct state grounds for disciplinary action and the findings and conclusion of the Board of Governors are fully sustained by the evidence. Beyond any doubt, the petitioner, in filing a complaint based upon a marital status which he knew did not exist and asserted loss of consortium by a man who, to his certain knowledge had been out of the state for the entire time mentioned in the pleading, sought to mislead the court. The conduct denounced by the Business and Professions Code is not the act of an attorney

by which he successfully misleads the court, but the presentation of a statement of fact, known by him to be false, which tends to do so. It is the endeavor to secure an advantage by means of falsity which is denounced.

■ The lack of direct evidence of an intent to deceive or that the petitioner acted out of malice or with the hope of profit does not, as contended by him, compel a determination in his favor. Nor is the fact that no one was deceived or damaged a defense to the charges of The State Bar. ■ Mitigating circumstances may be considered in determining the discipline to be imposed upon an attorney (*Marsh* v. *State Bar*, 2 Cal.2d 75 [39 P.2d 403]), and undoubtedly the petitioner's actions in disclosing the falsity of the allegations of the complaint at the time of negotiations for settlement influenced the local committee in recommending a suspension of eighteen months and the Board of Governors in reducing that period to one year.

■ Although it is true, as Pickering contends, that in disciplinary proceedings evidence which bears the earmarks of private spite should be scrutinized most carefully and accepted with caution (*Peck* v. *State Bar*, 217 Cal. 47 [17 P.2d. 112]), whatever may have been the personal motive for the instigation of State Bar proceedings is immaterial where the facts independently disclose that the attorney is subject to discipline. (*Rohe* v. *State Bar*, 17 Cal.2d 445 [110 P.2d 389]; *Geibel* v. *State Bar*, 14 Cal.2d 144 [93 P.2d 97]; and *Tapley* v. *State Bar*, 8 Cal.2d 167 [64 P.2d 404].)

It is ordered that George A. Pickering be suspended from the practice of law for a period of one year commencing thirty days after the date of filing of this opinion.

CARTER, J.—I dissent. In my opinion the facts stated in the majority opinion are insufficient to justify a judgment of suspension of petitioner from the practice of law for the period of one year or any other period. While I do not wish to be understood as condoning the conduct of an attorney in the insertion in pleadings of statements which he knows to be untrue, I think it is clear that the conduct of petitioner in this case was no different from that of a very large percentage of practitioners before the bar of this state, and if he is to be disciplined, then all of these practitioners are likewise subject to discipline. In my opinion there is no distinction between a false allegation in a complaint and the

denial in an answer of an allegation in a complaint which the person answering knows to be true. In other words, it requires an allegation and a denial to create an issue, and while it may be conceded that in most cases both allegations and denials are made in good faith and in an honest belief that the pleading states the truth, it is a matter of common knowledge that attorneys in the preparation of answers permit their clients to deny allegations in the complaint which they know to be true, and which they do not intend to offer evidence to rebut.

In my experience as a practitioner before the bar of this state I have examined many pleadings prepared by lawyers of the highest ethical standing containing allegations and denials which I knew that the lawyers preparing such pleadings knew to be untrue; in fact, it is not unusual to find answers denying corporate existence, denying that the person committing the wrong was the agent of the defendant or was acting within the course of his employment as such agent; or in Federal Employers Liability cases, denying that either the employer or the employee were engaged in interstate commerce at the time of the accident which resulted in the injury to plaintiff. In many of these cases the facts with reference to the existence of the agency or that the agent was acting within the course of his duties, or that the employer and employee were engaged in interstate commerce, were matters exclusively within the knowledge of the defendant or person making the denial, and of course, the attorney preparing the answer knew of the falsity of such denial at the time the same was prepared. If petitioner in the case at bar is subject to discipline for the allegation which he placed in the complaint which is the subject of this proceeding, then every other member of the bar who prepares a pleading containing an allegation or denial which he has reason to believe is untrue, is likewise subject to discipline.

I have observed in my practice many instances much more flagrant than the one involved in the case at bar where allegations or denials were inserted in pleadings which resulted in subjecting the opposing party to delay and expense in meeting, yet I have never heard it suggested that attorneys who resort to such practices are subject to discipline for a violation of the provisions of the Business and Professions Code or the Rules of Professional Conduct of The State Bar of California.

If The State Bar desires to embark upon a program with the objective of disciplining all members of the bar who knowingly insert in their pleadings statements which they know or have reason to believe are untrue, I will wholeheartedly support such a program, but I very positively object to singling out petitioner, whose transgression, if it may be called such, is trivial and insignificant compared to the practice of many members of the bar in high places whose right to resort to such practice continues unchallenged.

Petitioner's application for a rehearing was denied May 18, 1944. Carter, J., voted for a rehearing.