[L.A. No. 31398. Oct. 29, 1981.]

FRED R. CRANE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

118

**COUNSEL**

Joseph Shemaria and Joseph F. Walsh for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Gael T. Infande for Respondent.

OPINION

**THE COURT.**—We review a recommendation of the State Bar Court that petitioner, Fred R. Crane, be suspended from the practice of law for one year, but that the suspension be stayed on conditions of one year's probation, passage of the Professional Responsibility Examination, and compliance with rule 955 of the Rules of Court in the event petitioner does not pass that examination within one year of the effective date of his suspension. Petitioner contends that the findings of the State Bar Court are not supported by the evidence, and that the discipline recommended is excessive. We conclude that properly supported findings fully warrant the recommendations.

Petitioner was admitted to practice law in California in the summer of 1972 and has no prior discipline. Before his admission, petitioner had been a real estate salesman since 1961 and a real estate broker since 1964. His legal practice has been largely confined to real estate matters.

On December 18, 1979, formal proceedings were instituted against petitioner by a notice to show cause charging him with violation of his oath and duties as an attorney (Bus. & Prof. Code, § 6103), commission of acts involving moral turpitude and dishonesty (*id.*, § 6106) and wilful violation of rules 7-103 and 7-104 of the Rules of Professional Conduct of the State Bar of California. Those charges arose from two unrelated matters.

### 1. *The Mercury Case*

Representing the sellers of a residence, in April 1978 petitioner sought and obtained from Mercury Savings and Loan Association (Mercury), the beneficiary under a first trust deed, a beneficiary statement describing the status and indebtedness of the underlying loan. (See Civ. Code, § 2943.) Without either the consent or knowledge of Mercury, he then "crossed out" certain printed material included in the statement by Mercury. The deleted language gave notice that Mercury intended to enforce an acceleration clause in the note and deed of trust unless it received an assumption agreement executed by any purchaser of the premises. Petitioner subsequently forwarded the altered statement to the escrow company handling the sale, describing it as "the Beneficiary Statement from the ... lender on your escrow," and with-

out notifying that company that the deletions were made by him and were wholly unauthorized.

The State Bar Court found petitioner's conduct in this regard to be wilful, improper and a dishonest act under the statute. (Bus. & Prof. Code, § 6106.)

### 2. *The Robinson Case*

In December 1978 petitioner communicated with counsel for Mr. and Mrs. Robinson both by telephone and by mail in connection with the unrecorded claim of petitioner's client to real property which was subject to a trust deed then being foreclosed by the Robinsons. Both orally and in writing, the Robinsons' attorney specifically advised petitioner that he represented the Robinsons. Thereafter, petitioner's office sent two letters directly to the Robinsons without notifying their lawyer. The first—which apparently was a "followup" to a still earlier letter sent to the Robinsons before petitioner had been contacted by their lawyer—repeated a request for a beneficiary statement on their trust deed and offered to "waive" the $100 statutory penalty (see Civ. Code, § 2943) if it was received promptly. The second, sent seven days later, demanded that the Robinsons forward "forthwith" the $100 and the beneficiary statement. It stated further that if the statement was not received within five days, an action would be commenced against the Robinsons to recover both damages and the forfeiture, and that "the Department of Savings and Loan and the Attorney General's office will be requested to assist us in solution." A notation on the last letter indicated that copies were being sent to a named commissioner of the Department of Savings and Loan and to a named deputy attorney general. The letters were on petitioner's legal stationery and purported to be signed by him.

The State Bar Court found that petitioner's direct communication with the Robinsons despite his knowledge that they were represented by a lawyer was a clear violation of rule 7-103 of the Rules of Professional Conduct, and that his final letter to them constituted an impermissible threat in violation of rule 7-104.

### DISCUSSION

With respect to the Mercury matter, petitioner admits both his unauthorized alteration of the beneficiary statement and his failure to advise the escrow company that the deletion was his, and not that of the

beneficiary or trustee under the trust deed. He denies, however, that he was "dishonest" arguing that he had no intent to deceive the escrow company, but merely sought to prevent Mercury from improperly interfering with the prospective sale by asserting demands which Mercury had no right to make in the beneficiary statement.

We reject petitioner's disavowal of any dishonest intent. Even if we assume for purposes of argument that Mercury endangered the successful closing of escrow by asserting a right which it did not have, any such risk could be removed or minimized *only* if the reader of the statement believed the acceleration language was deleted by Mercury itself. The circumstances of petitioner's unauthorized unilateral alteration were deceptive and known by him to be so.

Whatever the merits of petitioner's claim based upon the limitations of Mercury's rights under *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], the means used by petitioner to further his position were dishonest and involved moral turpitude within the meaning of Business and Professions Code section 6106 and warrant discipline. (See *Phillips* v. *State Bar* (1975) 14 Cal.3d 492, 500 [121 Cal.Rptr. 605, 535 P.2d 733, 91 A.L.R.3d 966].)

■ In the Robinson matter, petitioner also admitted in a stipulation of facts filed with the State Bar Court his "technical violation" of rule 7-103 of the Rules of Professional Conduct by communicating directly with the Robinsons despite his awareness that they were represented by counsel. He now contends, however, that the letters to the Robinsons requesting, and then demanding, the beneficiary statement and statutory penalty, and threatening suit and action by state officials, were not "upon a subject of controversy" and that his client and the Robinsons were not "adverse parties" within the meaning of that rule.

There was substantial evidence to the contrary, however, including testimony of the Robinsons' lawyer that he had discussed with petitioner the adverse interest of the parties in connection with the foreclosure of the trust deed, and beyond that evidence, the contents of the letters themselves belie petitioner's claims.

We similarly reject petitioner's asserted excuse that any violation of rule 7-103 was inadvertent and precipitated by members of his staff. Acknowledging negligence in failing properly to prevent direct contact with represented parties by correspondence on his letterhead and over

his purported signature, petitioner contends that the discipline proposed for that negligence is unduly severe. Petitioner's attempt to avoid the blame for his violation of the Rules of Professional Conduct is unconvincing. An attorney is responsible for the work product of his employees which is performed pursuant to his direction and authority. (See *Black* v. *State Bar* (1972) 7 Cal.3d 676, 692 [103 Cal.Rptr. 288, 499 P.2d 968].) The legal onus for the violation of rule 7-103 rests upon petitioner alone.

His further claim that his final letter to the Robinsons did not violate rule 7-104 lacks merit. We find invalid his contention that the letter could not reasonably be interpreted as an improper threat to "present criminal, administrative or disciplinary charges to obtain an advantage in a civil action." Viewed from the perspective of the Robinsons, and considered in context, the last letter, and the notation thereon that copies were being sent to official agencies, could quite reasonably be construed as violative of rule 7-104. Petitioner's claim that he was unaware of the effect of his letters is equally unavailing because he continued to send them even after the Robinsons' lawyer advised petitioner that the letters were specifically violative of the Rules of Professional Conduct.

Petitioner implies that these disciplinary proceedings were motivated in part from "private spite" because he was counsel in the *Wellenkamp* litigation, *supra.* (Cf. *Pickering* v. *State Bar* (1944) 24 Cal.2d 141, 145 [148 P.2d 1].) The motivation in initiating the investigation of petitioner, however, has little bearing on the sufficiency of the evidence to support the factual findings of the State Bar Court, which are entitled to great weight. (See *In re Conflenti* (1981) 29 Cal.3d 120, 124 [172 Cal.Rptr. 203, 624 P.2d 253]; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 712-713 [108 Cal.Rptr. 821, 511 P.2d 1173].) Upon our independent review of the record (see *In re Conflenti, supra*, at p. 124; *Marcus* v. *State Bar* (1980) 27 Cal.3d 199, 201 [165 Cal.Rptr. 121, 611 P.2d 462]), we conclude that those findings are amply supported by the weight of the evidence. Whatever prompted the inquiry into petitioner's conduct, it is that conduct itself which warrants discipline. (See *Pickering* v. *State Bar, supra*, 24 Cal.2d 141, 145.)

Finally, petitioner challenges the recommended discipline as too severe. **(4)** While we have the ultimate responsibility for determining appropriate discipline (*In re Arnoff* (1978) 22 Cal.3d 740, 747 [150 Cal.Rptr. 479, 586 P.2d 960]), the burden rests upon petitioner to dem-

onstrate the impropriety of the discipline recommended by the State Bar for the protection of the public, the courts and the legal profession itself. (*In re Petty* (1981) 29 Cal.3d 356, 360 [173 Cal.Rptr. 461, 627 P.2d 191]; *In re Conflenti, supra,* 29 Cal.3d 120, 124.) ▮ In our view petitioner has failed to carry that burden. His actions clearly violated the statutes and State Bar rules. His attempt to deceive the escrow agent by his falsification of the Mercury beneficiary statement was a dishonest act involving moral turpitude (Bus. & Prof. Code, § 6106) and his wilful and direct communications with the Robinsons violated the State Bar's Rules of Professional Conduct. (Rules 7-103, 7-104.) Comparable discipline has been imposed in similar cases. (See *Phillips* v. *State Bar, supra,* 14 Cal.3d 492 [falsifying letter and other misconduct—one year actual suspension]; *Mitton* v. *State Bar* (1969) 71 Cal.2d 525 [78 Cal.Rptr. 649, 455 P.2d 753] [communicating directly with adverse party—three months' actual suspension]; *Turner* v. *State Bar* (1950) 36 Cal.2d 155 [222 P.2d 857] [same]; *Hallinan* v. *State Bar* (1948) 33 Cal.2d 246 [200 P.2d 787] [deceiving opposing counsel by simulating client's signature on release even though legally authorized to do so—three months' actual suspension].) While it is arguable that the penalty imposed is actually lenient, we adopt the recommendations of the State Bar Court.

Accordingly, it is ordered that Fred R. Crane be suspended from the practice of law in this state for a period of one year, but that such suspension be stayed and petitioner placed on probation for one year on condition that he pass the Professional Responsibility Examination during that period. This order is effective 30 days after the filing of this opinion.