[L.A. No. 31577. Mar. 14, 1983.]

In re DOUGLAS D. GROSS on Suspension.

## COUNSEL

Donald R. Wager and Arthur E. Schwimmer for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Magdalene Y. O'Rourke for Respondent.

## OPINION

**THE COURT.**\*—We review the discipline of petitioner which was recommended by the State Bar Court following his conviction for capping. (Bus. & Prof. Code, § 6152, subd. (a).) The proposed discipline includes three years' suspension from the practice of law, with that suspension stayed, and three years' probation on conditions which require actual suspension for one year, passage of the Professional Responsibility Examination, and compliance with various reporting requirements.

Petitioner seeks collaterally to challenge (1) his capping conviction and, therefore, (2) the validity of the State Bar investigation precipitated by that conviction, and (3) the proposed discipline resulting therefrom.

The jurisdictional basis of his attack on the conviction, which followed his plea of nolo contendere, is founded on his claim that the statute of limitations on the capping offense ran before the entry of his plea to that misdemeanor. While failing to raise that challenge either in the criminal proceeding or by habeas corpus petition, he seeks dismissal of these proceedings and urges that these State Bar disciplinary proceedings represent a proper forum in which to assert his claim. Petitioner acknowledges that his actions, found by the State Bar to be misconduct, could properly have been the subject of original disciplinary proceedings independent of his criminal conviction. Nonetheless, he asserts that we cannot now view the current proceedings as "original" and cannot permit the State Bar either to amend them, to denominate them as "original," or to institute new disciplinary proceedings. Finally, petitioner urges that if his foregoing arguments are rejected, the lesser discipline suggested by the State Bar hearing panel would be more appropriate.

Petitioner was admitted to the practice of law in this state in 1968 and was privately reproved by the State Bar pursuant to stipulation on June 12, 1980, for overcharging clients. (State Bar No. L.A. 3221.)

---

\*Before Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Ashby, J.†

---

†Assigned by the Chairperson of the Judicial Council.

In January 1977, petitioner was criminally charged with presenting a fraudulent claim to an insurance company (Ins. Code, § 556, subd. (a)) and attempted grand theft (Pen. Code, §§ 664, 487, subd. 1). The acts giving rise to the charges occurred on or about January 21, 1976. The trial resulted in a hung jury, with 10 members of the 12-person jury voting for conviction. The prosecution and petitioner then entered into a plea bargain with the approval of the court which resulted in the filing of an amended information on April 26, 1977, charging petitioner with one count of capping (Bus. & Prof. Code, § 6152, subd. (a)) on or about January 21, 1976. (It is apparently conceded that the court and parties were aware there was no factual basis for the misdemeanor capping charge and that it was selected as a lesser offense pursuant to a compromise which no one now challenges.) Pursuant to the plea bargain, petitioner pled nolo contendere to the capping charge, and the counts alleging the presentation of a fraudulent claim and attempted grand theft were dismissed. As part of the bargain, the prosecution expressly reserved the right to proceed on the original felony counts if the plea and conviction on the capping charge were set aside for any reason, and petitioner was aware that the record of the criminal proceedings would be transmitted to the State Bar. Petitioner was thereupon fined $500 and placed on probation for two years.

When we received notice of petitioner's conviction, on November 9, 1978, we referred the matter to the State Bar for a hearing and report on the question whether "the facts and circumstances surrounding the commission of the offense" for which petitioner was convicted involved moral turpitude or other misconduct warranting discipline, and, if so, for a recommendation as to discipline.

After two hearings before a panel of the State Bar Court, which recommended, inter alia, 90 days' suspension, stayed, and three years' probation, the review department held its own hearing. Petitioner and his counsel appeared at all hearings. Thereafter, upon its independent review of the record, the review department unanimously rendered findings of fact and conclusions somewhat at variance with those of the hearing panel. (See Rules Proc. of State Bar, rule 452.)

The State Bar's report covered not only the misconduct of petitioner in January 1976 which formed the basis of the original criminal charges against him, but also three separate similar matters occurring over an extended period of time. (Because it is not clear whether petitioner received advance notice that one of those matters would be included in the State Bar investigation, we do not discuss that matter or consider it in reaching our decision.) The State Bar's pertinent findings follow:

## 1. The H. Matter

In 1971 petitioner employed Robert H., a nonlawyer, in his law office as office manager and claims negotiator. H. was to receive a percentage of petitioner's fee for each personal injury case settled by H. At petitioner's direction, H. negotiated an arrangement with a physician, Dr. John Stark, whereby Stark's office would prepare fraudulent medical reports and physiotherapy bills for both real and fictitious clients of petitioner reflecting nonexistent treatments. Under this scheme, personally negotiated by petitioner, he would receive "kickbacks" of from one-third to one-half of payments made on the fraudulent medical bills.

## 2. The L. Matter

As a result of personal injury sustained in an automobile collision in November 1973, Barry L., a personal friend of petitioner, received medical treatment costing $92. He rejected a $150 settlement offer for his injury and apparently was unsuccessful in his attempt to obtain legal representation from two lawyers because of the minimal medical bill. In October or November 1974, L. asked petitioner to represent him and petitioner agreed on condition that L. "go along with" petitioner's arrangement with Dr. Stark concerning medical bills. Thereafter, L. received by mail a bill from Dr. Stark in the amount of $725 for thirty-one physiotherapy treatments; the bill had been backdated to April 22, 1974, some six or seven months before he had retained petitioner. L., who had not received any treatments, was very disturbed because the dates of the alleged treatments would conflict with employment records showing he was at work at the times of the supposed treatments. When he informed petitioner of his concerns, petitioner told him to send the bill to petitioner, and he did so.

In anticipation of L.'s deposition, petitioner told him to visit Dr. Stark's office to familiarize himself with the surroundings. L. did so. At the subsequent deposition, accompanied by petitioner, L. falsely testified that Dr. Stark's bills were correct. Afterwards, petitioner advised L. that he had responded as he should have.

In January 1976, petitioner settled L.'s personal injury action for $2,100, partially on the basis of Dr. Stark's fraudulent physiotherapy bill. Thereafter, the Los Angeles District Attorney's office contacted L. about the lawsuit and Dr. Stark's bills. When L. notified petitioner about the investigation of the district attorney, petitioner advised him to remain firm in his false testimony because Dr. Stark's interim death would make it difficult for anyone to establish that L. had not received the treatments enumerated in the bills. Petitioner also told L. that if he recanted his false testimony he would be subject to prosecution for perjury.

### 3. THE M. MATTER

In July 1975, Douglas M. retained petitioner to represent him in a personal injury action arising from a vehicular accident. Petitioner referred M. to Dr. Stark for examination. After the examination, Mrs. Stark, who apparently ran Stark's medical office, told M. it would be necessary to schedule him for physiotherapy treatments because of damaged muscles he had suffered, but that it would not be necessary for M. actually to receive the treatments. Instead, Mrs. Stark told him that they would prepare the paperwork for the treatments and that it would be good for his case.

M. did not wish to become involved in the contemplated insurance fraud, so he contacted the carrier involved to inform it of the situation. In an ensuing investigation of petitioner and Dr. and Mrs. Stark by the district attorney's office, M. permitted the taping of certain telephone calls between M. and Mrs. Stark and between M. and petitioner. During taped telephone conversations on December 23, 1975, and January 14, 1976, M. told petitioner that certain of Dr. Stark's medical bills were false, charging for treatments that he did not receive.

Notwithstanding the information he received from M., petitioner did nothing to investigate or correct the false bills and in fact submitted those bills to the insurance company for the defendant in M.'s personal injury action in an attempt to settle the action.

The State Bar unanimously concluded that petitioner's foregoing conduct was dishonest and warranted the discipline noted.

### DISCUSSION

■ Petitioner advances procedural objections contending that the State Bar acted improperly in considering the misconduct outlined above, pursuant to our direction to consider "the facts and circumstances surrounding" only the capping offense. We have previously said that, "Whatever prompted the inquiry into petitioner's conduct, it is that conduct itself which warrants discipline. (See *Pickering* v. *State Bar* [1944] 24 Cal.2d 141, 145 [148 P.2d 1].)" (*Crane* v. *State Bar* (1981) 30 Cal.3d 117, 123 [177 Cal.Rptr. 670, 635 P.2d 163].) Our primary concern in these disciplinary proceedings is to protect the public, the courts and the legal profession itself from attorneys who are not fit to practice law. (See *In re Conflenti* (1981) 29 Cal.3d 120, 123 [172 Cal.Rptr. 203, 624 P.2d 253]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) Accordingly, only such irregularities in the State Bar proceedings as reasonably can be seen to have resulted in unfairness to the attorney

would cause us to disregard his misconduct disclosed thereby. No such unfairness is apparent here.

Further, to the extent petitioner's procedural objections bear examining, they are of doubtful validity. As a general matter, an attorney's conviction of a crime pursuant to a plea of nolo contendere is "conclusive evidence of guilt of the crime" for the purpose of disciplinary proceedings. (Bus. & Prof. Code, § 6101; *In re Kirschke* (1976) 16 Cal.3d 902, 904 [129 Cal.Rptr. 780, 549 P.2d 548]; *In re Bogart* (1973) 9 Cal.3d 743, 748 [108 Cal.Rptr. 815, 511 P.2d 1167].) We recently have held that there are neither constitutional nor policy reasons which preclude the Legislature from giving conclusive effect to convictions based upon such pleas for administrative disciplinary purposes, as it has done here. (See *Arneson* v. *Fox* (1980) 28 Cal.3d 440, 446-450, 452 [170 Cal.Rptr. 778, 621 P.2d 817].)

Petitioner, however, asserts the primacy of our earlier, more general, holding within a criminal context "that a conviction, even if based on a plea of guilty, is subject to collateral attack if the charge was originally barred by the applicable limitation period. (*In re Demillo* (1975) 14 Cal.3d 598 [121 Cal.Rptr. 725, 535 P.2d 1181]; *People* v. *McGee* (1934) 1 Cal.2d 611, 613 [36 P.2d 378].)" (*People* v. *Zamora* (1976) 18 Cal.3d 538, 547 [167 Cal.Rptr. 573, 615 P.2d 1361], fn. omitted.) He points out that the April 26, 1977, amendment of the information against him in the criminal proceeding to allege the capping misdemeanor on or about January 21, 1976, obviously ran afoul of the one-year statute of limitation pertaining to such offenses. (See Pen. Code, § 801.) Such amendment, he argues, cannot be viewed as relating back to the July 13, 1976, filing of the original information containing the felony charges. (See *People* v. *Chapman* (1975) 47 Cal.App.3d 597, 604-605 [121 Cal.Rptr. 315].) Petitioner contends that he is denied due process of law by the application of a conclusive presumption of guilt for disciplinary purposes on the basis of his nolo contendere plea and conviction because he is thereby deprived of the opportunity to challenge an invalid conviction. This contention was expressly rejected by us in *Arneson, supra,* (28 Cal.3d at pp. 448-450, 452) and petitioner's case presents little incentive to reexamine that holding.

In addition, we note that *Zamora* and the cases cited therein all involved felony convictions. Petitioner cites no authority permitting such collateral attack on misdemeanor convictions, such as his own. Further, there appear to be at least tenable grounds for distinguishing such cases. Before a court may approve a plea of guilty or nolo contendere to a felony, it must satisfy itself that there is a factual basis for the plea. (Pen. Code, § 1192.5; see *People* v. *Watts* (1977) 67 Cal.App.3d 173, 178 [136 Cal.Rptr. 496].) However, there is no similar requirement—statutory or constitutional—for the approval of such a plea to a misdemeanor. (*Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522,

530-531 [145 Cal.Rptr. 636].) Even if we adopted a rule requiring the demonstration of a factual basis before approval of a guilty or nolo contendere plea to a misdemeanor charge, violation of such a rule presumably would not require automatic reversal of a conviction based thereon; only a showing of prejudice amounting to a violation of a defendant's other constitutional rights or a miscarriage of justice should require so drastic a remedy. (*Id.,* at p. 531; see *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1064]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Petitioner demonstrates no such prejudice here.

Moreover, assuming that collateral attack on petitioner's conviction was permissible, petitioner offers no authority for the mounting of that challenge in these disciplinary proceedings. Nor does he explain his failure to appeal that conviction on such grounds or his failure to pursue his jurisdictional challenge by petition for habeas corpus. In view of the plea bargain's express provision for the revival of the felony charges against him in the event his capping conviction was challenged successfully, it may well be that the risk of conviction on reinstituted felony charges guided petitioner's tactical choice in avoiding those challenges. His collateral attack in this forum, if permissible at all, would not free him from that peril of reprosecution for the original felonies. Petitioner cannot reap the benefits of that bargain without paying the price to which he agreed.

Finally, even if successful in reversing his capping conviction in this or another forum, petitioner still could be investigated and disciplined for his misconduct, whether or not he was convicted of the revived felony charges or others upon reprosecution. (Bus. & Prof. Code, §§ 6102, 6106.) In short, petitioner's procedural objections to these disciplinary proceedings miss the essential point that it is his misconduct which warrants discipline and not his conviction, valid or not, which arises therefrom. However he may fare in the criminal arena, his fitness to practice law is a matter for separate and independent consideration by the State Bar and this court.

■ Petitioner's remaining objections relate to the sufficiency of the evidence to support the State Bar's findings and the propriety of the discipline recommended. Under well established precedent, he bears the burden of showing both that the evidence does not support the findings (*In re Schwartz* (1982) 31 Cal.3d 395, 399 [182 Cal.Rptr. 640, 644 P.2d 833]; *Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal.Rptr. 325, 622 P.2d 421]) and that the discipline recommended by the State Bar is improper (*In re Petty* (1981) 29 Cal.3d 356, 360 [173 Cal.Rptr. 461, 627 P.2d 191], and cases cited; *In re Conflenti* (1981) 29 Cal.3d 120, 124 [172 Cal.Rptr. 203, 624 P.2d 253], and cases cited). He has failed to carry either burden.

Even if we accept petitioner's argument that his previous private reproval by the State Bar should be disregarded here because the State Bar did not incorporate that matter formally into the record of this proceeding (see Rules Proc. of State Bar, rule 571 [permitting consideration of such other disciplinary proceedings if admitted into evidence]), the evidence actually adduced herein clearly is sufficient to support the State Bar's ultimate findings. In addition, in our view, the discipline recommended is minimal, considering the offenses. In *In re Petty, supra,* 29 Cal.3d 356, for example, we disbarred two attorneys for engaging in a similar scheme of falsification of automobile accidents, medical reports and bills. Although insurers there actually were defrauded of approximately $100,000, the fact that petitioner did not succeed so dramatically in his plan here was not for want of trying. In our view, his failure deserves little favorable consideration.

In the absence of mitigating circumstances, none of which appear, petitioner's presentation of false claims fully justifies disbarment. (See *id.,* at p. 361.) In passing we note, but do not apply, the statute made effective May 31, 1978, after the operative facts in the present matter, by which presentation of false insurance claims is expressly made an independent ground for disbarment or suspension. (Bus. & Prof. Code, § 6106.5.)

Although we place great weight on the recommendations of the State Bar (*Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137]), we must exercise our independent judgment in determining the appropriate punishment for professional misconduct. Here, the misconduct violates the very essence of professional ethics and morality expected of attorneys and endangers the public's confidence in the legal profession. In our view, it warrants more substantial discipline than that imposed by the State Bar Court.

It is arguable that disbarment would be appropriate here. In deference to the conclusions of the State Bar Court, however, we adopt the following discipline which includes, inter alia, a longer period of actual suspension than that proposed by either the hearing panel or the Review Department of the State Bar.

It is ordered that Douglas D. Gross be suspended from the practice of law in this state for a period of five years, that execution of such suspension be stayed and that he be placed on probation for a period of five years on the following conditions: (1) actual suspension for a period of three years and until he takes and passes the Professional Responsibility Examination administered by the National Conference of Bar Examiners; and (2) compliance with recommended conditions of probation numbered 2, 3, and 4 contained in the report of the State Bar Court in this matter dated January 25, 1982. It is further ordered that petitioner comply with subdivision (a) of rule 955 of the California Rules of Court within 30 days of the effective date of this order and with subdivision (c)

of that rule within 40 days of such effective date. This order shall be effective 30 days after the filing of this opinion.

**KAUS, J.**—I agree with the court's conclusion that the State Bar properly treated this matter as a "conviction proceeding" pursuant to rules 601-603 of the State Bar Rules of Procedure. If, as Gross now contends, his capping conviction is invalid despite his knowing plea of nolo contendere to that charge as part of a negotiated plea bargain, he had ample opportunity to have the judgment set aside during the pendency of these proceedings, either by direct appeal of the conviction or by petition for habeas corpus.[1] If Gross had proceeded by either of those routes, of course, he faced the very real possibility that felony charges—which he had avoided by entry of his nolo plea—would be refiled. Having eschewed the established procedures for attacking an allegedly invalid conviction, and having thus retained the benefit of his bargain, he cannot properly complain of the treatment of this case as a conviction proceeding.

Rule 602 provides in part that in a conviction proceeding "[t]he hearing panel may take into consideration evidence of facts not directly connected with the crime of which the member was convicted if the facts are material to the issues stated in the order of reference." Pursuant to this provision, the State Bar properly considered the trial transcript of the criminal proceedings which preceded Gross' nolo plea to capping. Gross was given full and adequate notice that the transcript would be considered, and was not precluded from presenting his own witnesses to shed further light on the facts and circumstances underlying his capping conviction. On this record, Gross was not denied a fair hearing with respect to the factual matters disclosed in his criminal trial. (See rule 556.)

I concur in the discipline imposed in the lead opinion.

**RICHARDSON, J.**—I respectfully dissent.

The record before us discloses that petitioner conceived and implemented a complex and fraudulent plan for financial gain to himself. The plan was shot through and through with dishonesty and deceit. Petitioner directed the arrangement for deceptive medical bills, reporting fictitious treatments for nonexistent clients. He counselled his clients to conceal the true facts, advising them to testify falsely under oath and knowingly to take steps to lend authenticity to what he personally knew were dishonest representations. In other instances, if

---

[1] I would not want to predict the outcome of such an attack on the capping conviction. Suffice it to say that it suffers from the same type of "invalidity" which we encouraged in *People* v. *West* (1970) 3 Cal.3d 595, 611-614 [91 Cal.Rptr. 385, 477 P.2d 409], where we permitted the acceptance of pleas to "the same type of offense" as that charged in the accusatory pleading, even if the precise offense was not shown to have been committed. Were it not for the plea bargain, such pleas would have no hope of withstanding a habeas attack. (*People* v. *Mutch* (1971) 4 Cal.3d 389, 396 [93 Cal.Rptr. 721, 482 P.2d 633].) Should a plea to a misdemeanor, reasonably related to a charged felony, be deemed invalid simply because a conviction after trial could not withstand an attack based on the statute of limitations?

he did not counsel perjury, he remained silent with full knowledge that it was being committed by his client.

Petitioner suggests no mitigating circumstances. He has been disciplined previously. For a substantial period of time, criminal activity and moral turpitude have pervaded his conduct in a manner inconsistent both with his obligations as a lawyer and with the most minimal standards of ethics and professional integrity. In my opinion, petitioner should be disbarred.

**BIRD, C. J.,** Dissenting.—The majority misconstrues petitioner's argument. Here, petitioner does not seek to relitigate his *guilt*. The majority does not seem to grasp this aspect of his argument. Rather than relitigating his guilt, petitioner merely seeks to demonstrate the facial invalidity of his conviction in a manner similar to challenging an invalid prior conviction in a criminal proceeding. (See, e.g., Veh. Code, § 23208.)

Petitioner asks that the State Bar be required to follow the procedures outlined in rules 501-576 of the Rules of Procedure of the State Bar. Since the conviction he suffered was invalid, he contends that the facts underlying the alleged misconduct should have been reviewed and the invalid conviction should not have been used as a basis for circumventing the procedural due process rights inherent in a hearing under rules 501-576.

Without ever addressing the substance of petitioner's argument that he should be entitled to the procedural safeguards accorded in ordinary proceedings, the majority inexplicably reiterate the same point which petitioner asserts: "[I]f successful in reversing [*sic*] his capping conviction in this . . . forum, petitioner still could be investigated and disciplined for his misconduct . . . ." (Maj. opn. at p. 568.)

Indeed, petitioner has sought an investigation of his conduct in the context of an original proceeding from the beginning. In missing the point of his argument, the majority never really address this contention nor do they make a convincing case as to why it lacks merit.

Where, as here, a conviction was apparently invalid on its face, there seems to be no reason why the State Bar should not have investigated the facts of the alleged misconduct in proceedings in which the accused attorney would have been accorded procedural fairness.