[No. S006817. Mar. 6, 1989.]

In re FRANK GEORGE PRANTIL on Disbarment.

COUNSEL

Frank George Prantil, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Mara J. Mamet for Respondent.

OPINION

THE COURT.*—This is a proceeding to review the recommendation of the Review Department of the State Bar Court that petitioner Frank G. Prantil be disbarred. The review department adopted unanimously the findings and conclusions of the hearing panel, which recommended disbarment following petitioner's conviction of forgery by uttering. (Pen. Code, § 470.)

Petitioner seeks to collaterally attack the validity of his forgery conviction by reasserting due process claims previously raised in the criminal proceedings, rejected in the Court of Appeal and denied review by this court. As explained further below, we conclude that such collateral attacks are expressly prohibited by Business and Professions Code section 6101,[1] which makes the record of petitioner's conviction conclusive evidence of his guilt for purposes of disciplinary proceedings. We also conclude that petitioner's challenge to the constitutionality of section 6101 is without merit. Finally, after a review of the circumstances in aggravation and mitigation, we conclude that disbarment is warranted on the facts of this case and, accordingly, we adopt the review department's recommendation.

## I. FACTS

Petitioner was admitted to practice in 1964. In February 1979, we ordered that petitioner be suspended from the practice of law for six months after a State Bar hearing panel found that he intentionally misrepresented a client's wishes concerning representation and wrongfully withheld a retainer fee received as a result of such misrepresentations. (*Prantil v. State Bar* (1979) 23 Cal.3d 243, 247 [152 Cal.Rptr. 351, 589 P.2d 859].) We stayed

---

*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kaufman, J., and White (Clinton W.), J.†

[1] All statutory references are to the Business and Professions Code unless otherwise specified.

---

†Presiding Justice, Division Three, First Appellate District, assigned by the Chairperson of the Judicial Council.

execution of the suspension, and placed petitioner on probation for four years subject to his compliance with specified conditions. (*Ibid.*) Petitioner was still on probation when, in September 1981, he committed the acts that led to his conviction for forgery.

In early 1981, petitioner's client, Melvin Goins, introduced him to Daryl Bell. Bell subsequently asked petitioner to represent him on a charge of bank robbery and petitioner agreed, quoting Bell a fee of $10,000 for the representation. Shortly thereafter, petitioner received a call from a woman purporting to be Bell's mother. She asked petitioner to help her negotiate a $53,500 escrow check, from which petitioner would receive his $10,000 fee. Petitioner agreed, and accompanied the woman to his bank, where he introduced her to the teller as his client's mother and assisted her in depositing the check (payable to Joanna F. McKnight) into his trust account. It was later determined that the woman had used a false identification to establish her identity as Joanna McKnight, that the check had in fact been stolen from an escrow company,[2] and that the agent's signature on the check had been forged.

Petitioner was charged with forgery by uttering under Penal Code section 470, which makes it unlawful to pass or attempt to pass as true and genuine a forged instrument with knowledge of the forgery and with specific intent to defraud. At trial, petitioner argued that he knew nothing about the forgery and that he had helped the woman deposit the check merely for collection purposes.

In order to establish petitioner's criminal intent, the prosecutor introduced evidence indicating that: (1) Goins and Bell were involved in what the Court of Appeal described as "a simple plan . . . [to] forge[ ] trust deeds, name[ ] themselves or someone acting on their behalf as beneficiary and then [sell] the trust deeds pocketing the funds"; (2) petitioner or someone in petitioner's office had prepared four of the trust deeds later forged and recorded by Goins and Bell, two of which encumbered property owned by Joanna F. McKnight, a 78- to 80-year-old woman whose sole asset was the encumbered property; (3) petitioner was informed on several occasions that the instruments were forged, and that Bell and Goins appeared to be involved in a scheme to defraud the property owners; and (4) petitioner helped Bell's "mother," a woman 40 to 45 years of age, deposit the escrow check despite what the Court of Appeal called the "startling coincidence" that she had the exact same name as the 78- to 80-year-old woman whom petitioner had been informed was a potential victim of the forgery scheme. The jury accepted the prosecutor's view of the evidence, and found that

[2] The Court of Appeal noted that it was "[p]resumably Goins who had worked for a maintenance company with access to United Escrow [who] had stolen the check[ ]." (*People* v. *Prantil* (1985) 169 Cal.App.3d 592, 598 [215 Cal.Rptr. 372].)

petitioner passed the escrow check with knowledge that it was a forgery and with specific intent to defraud.

Petitioner appealed the conviction arguing, inter alia, that there was insufficient evidence on which to convict him and that he was denied due process based on (1) erroneous jury instructions,[3] (2) refusal by the prosecutor to grant judicial-use immunity to a potentially exonerating witness, and (3) a 20-month preindictment delay. The Court of Appeal rejected each of petitioner's contentions (*People* v. *Prantil, supra,* 169 Cal.App.3d 592), and we denied his subsequent petition for review. The United States Supreme Court denied certiorari (*Prantil* v. *California* (1986) 475 U.S. 1067 [89 L.Ed.2d 606, 106 S.Ct. 1387]).

Having exhausted all avenues of direct appeal, petitioner thereafter sought relief by means of a petition for habeas corpus in federal district court, alleging constitutional violations identical to those previously raised and rejected in his appeal. The district court summarily denied the petition, and the Ninth Circuit Court of Appeals, in a published opinion, affirmed. (*Prantil* v. *State of California* (9th Cir. 1988) 843 F.2d 314.)

The present disciplinary proceeding commenced when, on receipt of petitioner's record of final conviction, we referred the matter to the State Bar for a hearing and recommendations pursuant to section 6102.[4] Following a hearing, the State Bar referee recommended disbarment, and the review department unanimously adopted the recommendation.

## II. Discussion

### A. *Collateral Attack on the Forgery Conviction*

Petitioner asserts that the State Bar's recommendation is based on a conviction obtained in violation of his due process rights. He attempts to attack his forgery conviction collaterally by raising claims identical to those previously rejected in both the California Court of Appeal and the United States Court of Appeals, and denied review by this court as well as the United States Supreme Court.[5] Because we conclude that petitioner is

---

[3] Petitioner asserted he had been denied due process based on the trial court's failure to instruct on the requirement that the defendant intended to pass the forged instrument "as true and genuine." Petitioner also contended that the trial court committed reversible error in giving an intruction on aiding and abetting when there was insufficient evidence to warrant such a charge.

[4] In November 1983, we concluded that petitioner's crime was one involving moral turpitude and, pursuant to section 6102, subdivision (a), ordered that petitioner be suspended from the practice of law until further order of this court.

[5] Petitioner's initial objection to the State Bar's recommendation was limited to his assertion that the trial court denied him due process by failing to instruct adequately on the "true and genuine" element of forgery. (See *ante,* fn. 3.) In his reply to the State Bar's supporting

expressly precluded from such collateral attack by the terms of section 6101,[6] we do not reach the merits of his claims.

In *In re Kirschke* (1976) 16 Cal.3d 902 [129 Cal.Rptr. 780, 549 P.2d 548], we faced a situation virtually identical to the one presented here. The petitioner was convicted of a crime involving moral turpitude and the State Bar recommended disbarment. He made no effort to contest our finding of moral turpitude, or to offer mitigating circumstances in his own defense. Instead, he sought "to reassert his innocence" of the crime of which he was convicted. (*Id.* at p. 904.) We concluded the petitioner was "expressly precluded from this course of action by section 6101, which provides that in a proceeding to disbar an attorney because of a criminal conviction, 'the record of conviction shall be conclusive evidence of guilt of the crime of which he has been convicted.' Petitioner not only received a fair and lengthy trial by a jury of his peers and subsequent appellate review, but he also obtained a further exhaustive evaluation of his contentions when he filed a habeas corpus petition. *Petitioner's attempt in this proceeding to further collaterally attack his conviction must be rejected.*" (*Ibid.,* italics added).

■ Here, as in *Kirschke, supra,* 16 Cal.3d 902, petitioner had more than ample opportunity to litigate any perceived error in the proceedings below, and a review of the case law reveals that the conclusive presumption of guilt applies whether the convicted attorney seeks to "reassert his innocence" or merely to relitigate a claim of procedural error. (See *In re Alkow* (1966) 64 Cal.2d 838, 841 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882] [§ 6101 precludes consideration of alleged error in manslaughter proceedings]; *In re Rothrock* (1944) 25 Cal.2d 588, 592-593 [154 P.2d 392] [petitioner precluded from challenging underlying conviction on basis of mental state at time guilty plea entered].) Accordingly, we conclude that section 6101 precludes petitioner's attempt to reassert his due process claims.

Petitioner argues in the alternative that if we conclude section 6101 excludes his claim of constitutional error, then the statute itself is unconstitutional because it deprives him of his right to be heard at an "appropriate time" and in a "meaningful manner" as required under the due process clause of the United States Constitution. As explained below, petitioner's claim is without merit.

brief, however, petitioner renews his claim of error regarding the aiding and abetting instruction, as well as his claims of undue delay and failure to grant immunity. For the reasons noted *post,* we decline to reach the merits of any of these claims.

[6] Section 6101 provides in pertinent part: "In any proceeding, whether under this article or otherwise, to disbar or suspend an attorney on account of [conviction of a crime involving moral turpitude], the record of conviction shall be conclusive evidence of guilt of the crime of which he or she has been convicted."

In *In re Collins* (1922) 188 Cal. 701, 707-708 [206 P. 990, 32 A.L.R. 1062], we upheld against a due process challenge the automatic disbarment provisions of former sections 287, subdivision 1, and 289 of the Code of Civil Procedure. At the time, those sections provided not only that guilt was to be conclusively presumed from the record of conviction of a crime involving moral turpitude, but also that disbarment was to be ordered upon final conviction without notice or opportunity to be heard before entry of the disbarment order. We stated: "[W]ith regard to a disbarment under subdivision 1, no notice or order is required or provided for. The only notice which the accused attorney is to have under that subdivision is that which he receives on the trial of the criminal charge of which he has been convicted. The law informs him that one of the results of his conviction will be his subsequent disbarment in the manner provided by the Code of Civil Procedure. *This answers the constitutional requirement that he shall have due process of law before he can be deprived of his right to practice. The entire matter is involved in the criminal proceeding.*" (188 Cal. at p. 708, italics added).

Former sections 287, subdivision 1, and 289 of the Code of Civil Procedure were later incorporated into sections 6101 and 6102, respectively, of the Business and Professions Code. Section 6102 was amended in 1955 to eliminate the automatic disbarment provision and to provide for notice and opportunity to be heard on the question of discipline prior to the final order of disbarment.[7] However, the conclusive presumption of guilt for the underlying offense has been retained. Our answer to the constitutional claim of the petitioner in *Collins, supra,* 188 Cal. 701, thus applies to petitioner here. Petitioner was afforded full and meaningful opportunity to contest the validity of his underlying conviction by means of direct appeal and habeas corpus. He is not constitutionally entitled to raise his claims for a third time in these disciplinary proceedings. (See *In re Gross* (1983) 33 Cal.3d 561, 567 [189 Cal.Rptr. 848, 659 P.2d 1137] ["[N]either constitutional nor policy reasons" preclude the Legislature from giving conclusive effect to convictions based on nolo contendere pleas in bar disciplinary proceedings].) We perceive no constitutional infirmity in the conclusive presumption provision contained in section 6101.

Finally, petitioner argues that in his particular case he was denied meaningful review on appeal because both the California Court of Appeal and the Ninth Circuit "misstated" his arguments, "misquoted" the law, and generally misunderstood the significance of his constitutional claims. Such assertions amount to little more than a back-door attempt to obtain consideration of the legal merits of a Court of Appeal decision we expressly

---

[7] Section 6102 was amended again in 1985 to provide for summary disbarment under certain specified circumstances. (See § 6102, subd. (c).)

declined to review in October 1985. We must, in accordance with section 6101, decline to reach his claims of error in the criminal proceeding.

## B. *Appropriate Discipline*

Having concluded petitioner's conviction is conclusive evidence of his guilt of the crime of forgery, we turn now to the question of appropriate discipline. ■ Although we exercise our independent judgment in determining whether the facts and circumstances warrant a recommended disbarment, we nonetheless afford great weight to the recommendations of the State Bar. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331]; *In re Strick* (1987) 43 Cal.3d 644, 653 [238 Cal.Rptr. 397, 738 P.2d 743].) ■ Accordingly, petitioner bears the burden of proving that those recommendations are erroneous or unlawful. (*In re Gross, supra,* 33 Cal.3d 561, 568; *In re Schwartz* (1982) 31 Cal.3d 395, 399 [182 Cal.Rptr. 640, 644 P.2d 833, 26 A.L.R.4th 1077].) ■■ Additionally, we note that petitioner's crime of forgery is a serious one involving moral turpitude (*In re Bogart* (1973) 9 Cal.3d 743, 748-749 [108 Cal.Rptr. 815, 511 P.2d 1167]; *In re Hallinan* (1954) 43 Cal.2d 243, 247-248 [272 P.2d 768]) and that disbarment is the rule rather than the exception following conviction for such crimes (*In re Silverton* (1975) 14 Cal.3d 517, 523 [121 Cal.Rptr. 596, 535 P.2d 724]; *Bogart, supra,* 9 Cal.3d at p. 748).

At his disciplinary hearing, petitioner failed to introduce substantial evidence of mitigation to justify discipline short of disbarment. Instead, he relied almost entirely on the contention that he was unjustly convicted of the underlying offense. The only evidence of mitigation offered at the hearing came in the form of conclusory statements by petitioner. These included assertions that: (1) "no one was harmed" by his conduct (presumably because the forgery was discovered before the funds from the check could be withdrawn); (2) he has suffered great personal hardship as a result of his conviction and imprisonment, but nonetheless "endured" through it all; (3) he acted in good faith throughout the disciplinary proceedings; and (4) considerable time has passed since his crime was committed. The referee concluded that such assertions were insufficient to warrant leniency, particularly in light of petitioner's record of prior discipline. (See § 6102, subd. (d) ["In determining the extent of the discipline to be imposed in a proceeding pursuant to this article any prior discipline imposed upon the attorney may be considered"].)

We are not persuaded that the referee's conclusion, which was unanimously adopted by the review department, is erroneous. ■ In arriving at a proper discipline consistent with the purpose of disciplinary proceedings (i.e., to protect the public from attorneys unfit to practice), we must balance all relevant factors, including mitigating circumstances, on a case-

by-case basis. (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 726 [239 Cal.Rptr. 68, 739 P.2d 1236].) Here, however, petitioner offers little to counterbalance the seriousness of his offense beyond his own protestations that he was unjustly convicted. We therefore conclude that petitioner has failed to meet his burden of proving that the review department's recommendation of disbarment is unwarranted.

### III. CONCLUSION

Petitioner stands convicted of a serious crime involving moral turpitude, committed while he was on probation for an earlier disciplinary violation.[8] We are satisfied under the circumstances that disbarment is appropriate "to protect the public, as well as the courts and the legal profession." (*In re Bogart, supra,* 9 Cal.3d 743, 748.) We therefore adopt the review department's recommendation.

It is ordered that petitioner Frank George Prantil be disbarred and that his name be stricken from the roll of attorneys in this state. It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order. This order is effective upon the finality of this opinion.

---

[8] As an apparent afterthought in his reply brief, petitioner asks that we "give no weight" to the earlier disciplinary action on the theory that it, too, was wrongly decided. We decline to reexamine the merits of our earlier decision in that action, and we deny petitioner's request that we disregard it for purposes of this proceeding.