[No. S015441. Feb. 5, 1991.]

KERRY L. SORENSEN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Kerry L. Sorensen, in pro. per., for Petitioner.

Diane C. Yu, Richard J. Zanassi, Truitt A. Richey, Jr., Ann M. Finneran, Major Williams, Jr., and Janet S. Hunt for Respondent.

## OPINION

**THE COURT.**—The Review Department of the State Bar Court of California has recommended that petitioner Kerry L. Sorensen, who was admitted to practice in 1974, be suspended from law practice for one year, which term would be stayed during two years of supervised probation. Recommended conditions of probation include 30 days' actual suspension.

Petitioner claims the review department's recommendation is unsupported by the facts and is based on an erroneous interpretation of governing law. We disagree; we impose both the recommended discipline and, additionally, restitution as conditions of probation.

### I. *Facts and Procedure*

Petitioner's associate and employee, Graham J. Baldwin, held a deposition in Los Angeles County in a matter involving petitioner's client, an insurance carrier. Baldwin ordered a copy of the deposition transcript from the reporter, who was an employee of the Los Angeles Court Reporters, a deposition reporting firm. Ms. Brigante, owner of that firm, mailed a copy of the transcript to Baldwin, who refused to accept it because it had been sent c.o.d. Thereafter Brigante mailed another copy of the deposition, and enclosed her bill of $94.05.

Baldwin spoke with a local shorthand reporter, and on that basis concluded Brigante's bill was excessive. At the time, petitioner's office practice was to forward bills for expenses to the client (rather than pay them himself), enclosing a recommendation whether the client should pay the entire amount of the bill. On Baldwin's recommendation, the insurance carrier client issued and mailed a check to Brigante for only $49. Brigante received the check, and deposited it. She entered a question mark in her accounts because she could not discern to which account it pertained: the check was from an east coast firm; it did not match any of her pending invoices; it failed to identify the account on which it was sent; and it did not indicate it was sent as a partial payment.

Brigante sent Baldwin several copies of the invoice, but received no response. Thereafter—almost two months after she received the unidentified $49 check—she wrote to Baldwin requesting payment for the transcribed

deposition copy. Baldwin eventually responded by letter. He took umbrage that Brigante had originally sent the transcript c.o.d., but he did not object to the billed amount, and failed to mention that three months previously he recommended to his client that Brigante be paid only $49 of the bill. Instead he falsely told her that the bill had been forwarded *that day* to his client for payment.

After some time had passed and she still failed to receive the $94.05 payment, Brigante wrote to petitioner requesting payment. Still hearing nothing after half a year, she filed a small claims action against Baldwin, seeking recovery of $94.05 plus costs and interest. Petitioner testified he first learned of the billing dispute when the suit was filed.

Baldwin and petitioner discussed the events set out above and concluded (i) Brigante's bill was unreasonably high, and (ii) because she had been paid $49 by their insurance client, her suit for the full amount was "wrongful." Instead of explaining their views to her, however, or attempting to reconcile their dispute in the context of Brigante's small claims suit, they took the following course:

Baldwin failed to answer the small claims complaint. Instead, on the day before the small claims trial, petitioner filed on Baldwin's behalf a municipal court complaint against Brigante. The action, for "fraud and deceit," alleged: (i) Baldwin entered into an oral contract with the deposition reporter, Brigante's employee, for preparation of the deposition testimony; (ii) Brigante's employee induced Baldwin to enter the contract "by falsely and fraudulently failing to reveal and suppressing the fact that Defendants [would] not charge a reasonable sum for the copy . . ."; (iii) Brigante's employee intended to induce Baldwin to rely on these nondisclosed facts; and (iv) Baldwin so relied. The complaint sought "damages according to proof," as well as $14,000 in punitive damages.

Baldwin failed to appear at the small claims trial. Petitioner, however, was present in court during the trial. He watched as Brigante obtained a judgment of $123.94 (including costs and interest). As Brigante left the courtroom, he served her with the municipal court complaint.

Brigante obtained counsel, who answered the complaint and noticed Baldwin's deposition, which was set for January 24, 1984. Baldwin, cleverly noting that the year was 1985, and realizing that he could not travel back in time, simply failed to appear. Petitioner, meanwhile, refused to return Brigante's counsel's calls. Eventually Baldwin was ordered to appear for his deposition, and sanctions were imposed against him. Finally, despite other maneuvering by petitioner, the fraud action was dismissed on Brigante's

unopposed motion for summary judgment. In the process, Brigante incurred well over $4,000 in legal fees and expenses, and her attorney brought opposing counsel's conduct to the attention of the State Bar.

The hearing panel found: (i) there was no merit to the fraud action; (ii) both petitioner and Baldwin "abused and misused the process of the court in bringing that action"; and (iii) "[t]here was no justification in bringing that action in light of Respondent Baldwin's failure to answer or appear in the Small Claims proceedings and the minuscule amount which was at issue over the deposition transcript charge." The panel concluded that both petitioner and Baldwin "willfully violated their oaths and duties as attorneys, and in particular California Business and Professions Code [sections] 6068 and 6103, as well as [California] Rules of Professional Conduct, Rules 2-110(A) and 2-110(B)."

The panel found the following factors in aggravation: (i) the amount in dispute did not justify counsel's nonpayment of the bill, their default to the small claims proceedings, or their bringing of the fraud action; (ii) neither petitioner nor Baldwin showed regret or remorse about his actions; and (iii) "Because they are attorneys who know how to use and abuse the process, Respondents did, in fact, use their skill and learning to harass, menace and oppress Ms. Brigante, totally out of proportion to what was at issue." It found in mitigation the following: The record shows Brigante did not credit the $49 payment to the account in question, and court reporter charges in Los Angeles—where the deposition was taken—may be higher than in Orange County, where petitioner and Baldwin are accustomed to practice.

The panel recommended petitioner be publicly reproved and Baldwin be privately reproved, and that, inter alia, both be required to reimburse Brigante's legal fees and expenses.

The State Bar and both counsel sought relief in the review department. The review department essentially adopted the panel's findings of fact, conclusions of law, and findings of aggravating and mitigating factors but modified significantly the recommended discipline.

The review department *unanimously* recommended suspending petitioner for one year, stayed, with probation for two years on various conditions, including thirty days' actual suspension. (It voted nine to six to impose the same discipline on Baldwin, but to impose no actual suspension.) It declined, however, to recommend reimbursement of Brigante's legal fees and expenses, reasoning "[s]uch reimbursement would be an award of damages rather than restitution. The Review Department has declined to adjudicate

or to award damages in attorney disciplinary proceedings." The review department voted to increase the discipline over mere public reproval because:

"[P]ublic reproval is insufficient discipline on the facts of this case. Respondents maliciously and gratuitiously harmed Ms. Brigante to the extent of $4,805 in attorney fees and costs that she was required to pay to defeat their litigation. They persisted in their action and impeded the efforts of her counsel to bring the case to an early termination. They ignored Ms. Brigante's legitimate effort to resolve her claims in the small claims court. Their conduct reflects ill will, absence of good judgment, and failure to recognize the ethical responsibilities of attorneys. The sanction in such circumstances should reflect the harm to Ms. Brigante; assurance to the public and to the bar that such conduct will not be tolerated; and the lack of insight and remorse evidenced by the Respondents. The Review Department believes that a significant stayed suspension and probationary period is appropriate in both cases. Insofar as Respondent Sorensen was the employer of Respondent Baldwin and counsel of record in the litigation, his responsibility is greater, and in his case a 30-day actual suspension is warranted as a condition of probation."

Baldwin accepted the review department's determination and did not seek review. Thereafter we imposed the recommended discipline on him. (No. S016608.)

## II. *Analysis*

Business and Professions Code section 6068 (further section references are to this code) makes it the duty of attorneys "(a) To support the Constitution and laws of the United States and of this state . . . . [¶] (c) To counsel or maintain such actions, proceedings, or defenses only as appear to him or her legal or just . . . . [¶] (g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest . . . ." Section 6103 provides: "A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as an attorney, constitute[s] causes for disbarment or suspension."

At the time of the events in this case, Rules of Professional Conduct, former rule 2-110 (since rephrased and revised in 1989 as rule 3-200) read in part: "A member of the State Bar shall not seek or accept employment to accomplish any of the following objectives, nor shall the member do so if he knows or should know that the person solicited for or offering employment

wishes to accomplish any of the following objectives: [¶] (A) Bring a legal action, conduct a defense, or assert a position in litigation, or otherwise take steps, solely for the purpose of harassing or maliciously injuring any person or to prosecute or defend a case solely out of spite. [¶] (B) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification or reversal of existing law . . . ."

As noted above, the review department concluded petitioner violated both subdivisions of former rule 2-110 of the Rules of Professional Conduct. It also found he violated sections 6068 and 6103, but did not specify the particular subdivision of section 6068 or aspect of section 6103 that formed the basis of the violations. Petitioner, seizing on the review department's lack of specificity, asserts he cannot have violated section 6068, subdivision (a) (violation of the "laws of the United States and of this state"), because, he claims, at most he violated a "rule" of the State Bar. He also points to obviously inapplicable aspects of section 6103 ("wilful disobedience or violation of an order of the court") and asserts that because there is no evidence he violated a court order, that aspect of section 6103 does not apply to him. Finally, he asserts the record shows: (i) he (through Baldwin) investigated the incident and learned that the rate charged by Brigante was higher than that of reporters in Orange County, his regular area of practice; (ii) he reasonably formed the conclusion that the fraud action was meritorious; and (iii) his intent in bringing the action was not "solely," or at all, to harass or injure Brigante. Accordingly, he asserts, he cannot be found to have violated the Rules of Professional Conduct, former rule 2-110(A) (bringing an action "solely" to harass, or "solely" out of spite) or (B) (presenting a claim not warranted under existing law).

■ Petitioner, of course, has the burden of "demonstrat[ing] that the findings are not supported by the evidence or that the recommendations are erroneous or unlawful." (*Ashe* v. *State Bar* (1969) 71 Cal.2d 123, 133 [77 Cal.Rptr. 233, 453 P.2d 737].) ■ We need not address petitioner's above listed objections to the findings because, as explained below, our independent review of the testimony and record (see *Bach* v. *State Bar* (1987) 43 Cal.3d 848, 855 [239 Cal.Rptr. 302, 740 P.2d 414]) discloses a clear violation of section 6068, subdivisions (c) and (g), and under the circumstances any violation of the additional sections and former rules would not change appreciably our determination of appropriate discipline.

Clearly petitioner was motivated in large measure by spite and vindictiveness, and he acted on those base impulses by selecting the most oppressive and financially taxing means of redress, out of all proportion to the minor sum and rather innocuous incident in controversy. His reaction provides

strong circumstantial evidence of his motivation. A reasonable attorney who was truly interested in simply resolving a billing dispute could and would have taken a number of lesser measures that petitioner apparently either failed to consider, or worse, considered and rejected. He would have returned Brigante's numerous phone calls and letters, apprised Brigante of the fact that she had been paid part of the disputed fee by the client, and explained his belief that the bill was too high. At most, he might have advised Baldwin to file an answer to the pending small claims complaint, and to appear at the small claims trial to explain "their" side of the story. He would not have ignored for six months Brigante's phone calls and letters. He would not have waited until after the small claims judgment was filed before serving his complaint on Brigante. He would not have sat in the audience of the small claims court so that he could personally serve Brigante after she obtained her judgment. And he would not have filed a complaint for fraud, seeking $14,000 in punitive damages to redress a $45 billing dispute concerning which his firm had suffered no damages. This was clearly not a case of fraud; it was a simple and minor billing dispute, and nothing more.

We conclude the record adequately supports a conclusion that petitioner violated section 6068, subdivision (c), by breaching his duty to "counsel or maintain such actions . . . only as appear to him or her legal or just," and subdivision (g), by breaching his duty "[n]ot to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."

Petitioner's contrary assertions are unconvincing. He states that he believed Brigante overbilled him, and that he was offended when she sought to collect the full amount of her bill even after she had been paid part of that fee by petitioner's client. He asserts he intended to meet with Brigante before the small claims action was heard, and to serve her with the complaint only if she insisted on proceeding with her action. He claims he was "unable" to meet her before the small claims action was heard, and thus was forced to serve her with the complaint immediately after the small claims session. Petitioner would apparently have us believe he was somehow "compelled" to ignore Brigante's legitimate attempts to reconcile her bill, to serve Brigante with the fraud complaint, and thereafter to drag her through extensive legal hoops at her considerable expense, only to submit, eventually, to unopposed summary judgment. We will not belabor this point; it is wholly unpersuasive.

### III. *Appropriate Discipline*

As above, we exercise our independent judgment in determining whether the recommended discipline is appropriate, excessive, or

inadequate. In exercising our authority we accord great weight to the review department's determination. Petitioner bears the burden of proving the recommendation erroneous or unlawful. (*In re Prantil* (1989) 48 Cal.3d 227, 234 [255 Cal.Rptr. 890, 768 P.2d 109].)

The Standards for Attorney Sanctions for Professional Misconduct (Rules of Proc. of State Bar, div. v) (standards) make violation of section 6068 punishable by disbarment or suspension, depending on the gravity of the offense. (Std. 2.6(a).) We agree with the review department that the sanction must reflect: (i) the harm to Ms. Brigante; (ii) assurance to the public and to the bar that such conduct will not be tolerated; and (iii) the lack of insight and remorse shown by petitioner.

As noted above, the review department declined to recommend petitioner make restitution to Brigante as an item of discipline. We solicited briefing on that issue from petitioner and the State Bar.

Both parties agree we have the authority to impose restitution as a condition of probation. Predictably, petitioner initially asserted we should not do so, lest we run the risk of imposing "excessive" discipline. At oral argument, however, petitioner conceded that restitution is appropriate in this case. The State Bar asserts restitution should be imposed to protect the public and assist petitoner's rehabilitation, and to compensate Brigante for petitioner's misconduct.

Unlike the review department, we do not view restitution in this context as a "damage award." Nor do we approve imposition of restitution as a means of compensating the victim of wrongdoing. (See *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 374 [261 Cal.Rptr. 318, 777 P.2d 91] [judicial powers clause precludes administrative agency from awarding traditional "damages," but agency may award restitutive monetary relief when doing so is "merely incidental to a proper, primary regulatory purpose"].) Rather, we consider restitution a necessary condition of probation designed to effectuate petitioner's rehabilitation and to protect the public from similar future misconduct. Although most of our previous cases requiring restitution as a condition of probation have involved misuse of client funds (e.g., *Brookman* v. *State Bar* (1988) 46 Cal.3d 1004, 1008-1009 [251 Cal.Rptr. 495, 760 P.2d 1023]; *Hippard* v. *State Bar* (1989) 49 Cal.3d 1084, 1092-1095 [264 Cal.Rptr. 684, 782 P.2d 1140]) and unearned fees (e.g., *Bernstein* v. *State Bar* (1990) 50 Cal.3d 221, 234 [266 Cal.Rptr. 625, 786 P.2d 352]; *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 823-824 [263 Cal.Rptr. 798, 781 P.2d 1344]), we believe the same protective and rehabilitative principles apply in the case of a party who has been forced to incur legal fees as a result of an attorney's violation of section 6068, subdivisions

(c) and (g). In both instances, private persons have incurred specific out-of-pocket losses directly resulting from attorney misconduct. Restitution of these amounts emphasizes the professional responsibility of lawyers to account for their misconduct, and thereby serves to both protect the public and instill public confidence in the bar.

We next determine the appropriate amount of restitution. The hearing panel ordered that petitioner reimburse Brigante "for all legal fees and expenses incurred in defending the *Baldwin* action . . . ," but did not make a finding as to the amount involved. The review department, as noted above, stated that Brigante was forced to incur "$4,805 in attorney fees and costs" to defend against petitioner's suit. In its supplemental brief, however, the State Bar concedes that legal fees were "in excess of $3,900, but less than $4,000," and that costs were "roughly $475."

The record supports the State Bar's view, and establishes that the fees and expenses were reasonably incurred. Before the hearing panel, Brigante's attorney, David M. Gruewitz, testified that when the litigation began he billed himself at $115 per hour, and his associate at $85 per hour, and that by the time the litigation was concluded, he billed himself at $150 per hour, and his associate at $100 per hour. He explained that Brigante paid his bill in full, and described the work performed: (i) researching and answering the complaint; (ii) noticing and attending Baldwin's deposition; (iii) gathering and reviewing documents for Brigante's deposition, and attending that deposition; (iv) drafting a motion to dismiss based on petitioner's misconduct, and attending a hearing on that motion; (v) subpoenaing witnesses' documents; (vi) writing letters to petitioner after petitioner refused to return phone calls; and (vii) bringing a successful summary judgment motion. Gruewitz's testimony is corroborated by the municipal court file in *Baldwin*, which was made part of the record below.

There is no evidence that the rates charged or the fees incurred were unreasonable. On the facts of this case, we conclude the evidence supports a finding that Brigante ressonably incurred legal fees of at least $3,900, and expenses of $475.

Exercising our independent judgment, we impose the following discipline: Petitioner is suspended from law practice for one year, which term will be stayed during two years of supervised probation. Conditions of this probationary period include: (i) 30 days' actual suspension; (ii) restitution to Brigante in the amount of $4,375; and (iii) compliance with the terms set out in the review department's decision. In addition petitioner is ordered to take and pass the Professional Responsibility Examination within one year

of the effective date of this order. This order is effective on finality of this decision in this court (see Cal.Rules of Court, rule 953(a)).