Filed 3/16/23  P. v. Waldo CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN WALDO,<br><br>    Defendant and Appellant. | F082459<br><br>(Super. Ct. No. BF178331A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Steven Waldo was charged by information with kidnapping (Pen. Code,[1] § 207, subd. (a); count 1); felony false imprisonment (§ 237; count 2); lewd acts

---

[1]    All further undesignated statutory references are to the Penal Code.

against a 14-year-old (§ 288, subd. (a); count 3); and misdemeanor annoying a child (§ 647.6, subd. (a)(1); count 4), arising from an incident where he approached a 14-year-old girl in a store, falsely identified himself as a loss prevention officer, and had her follow him to the women's restroom where he purported to check her for stolen goods by touching her sides and legs.

A jury convicted appellant of kidnapping and false imprisonment as charged in counts 1 and 2. The jury hung as to counts 3 and 4, and as to those counts, the court declared a mistrial. Subsequently, appellant came to a resolution with the People; pursuant to the agreement, the People moved to dismiss counts 3 and 4 and amend the information to include two counts of misdemeanor battery (§ 243, subd. (a); counts 5 & 6) and appellant pled no contest to those counts in exchange for concurrent sentencing.

Appellant was sentenced to the lower term of three years as to count 1 and the lower term of 16 months as to count 2, to be served concurrently with count 1. As to each of counts 5 and 6, the court imposed a term of 180 days of imprisonment in county jail to be served concurrently to his prison sentence.

On appeal, appellant contends his kidnapping conviction must be reversed because the court erred by instructing the jury that they could find the force or fear element was satisfied if appellant used an implicit threat of arrest to move A.T. that caused her to hold a reasonable belief she would be forced to move if she did not comply. Appellant also contends the kidnapping conviction was not supported by sufficient evidence; specifically, the jury's finding he utilized force or fear. In the alternative, appellant contends he was improperly convicted of both kidnapping and false imprisonment in violation of the prohibition of double jeopardy and that one of the convictions must be reversed.

Appellant also raises the following sentencing issues. He contends the court improperly punished him for both misdemeanor convictions in counts 5 and 6. He contends the matter must be remanded for resentencing in light of Assembly Bill No. 518

2.

(2021-2022 Reg. Sess.) (Assembly Bill 518).  Finally, he contends the court exceeded its authority by issuing a postconviction criminal protective order restraining him from contact with the victim.

We vacate appellant's false imprisonment conviction in count 2.  We direct the trial court to vacate the February 10, 2021 criminal protective order and forward the order vacating the criminal protective order to the appropriate authorities.  We decline to remand for resentencing as doing so would be futile.  We otherwise affirm the judgment.

## FACTS

**Prosecution Evidence**

On or about September 17, 2019,[2] then 14-year-old A.T. went to Target with her adult sister and infant niece and began browsing in the makeup section.  While A.T. was browsing in one of the aisles alone, and her sister and niece were in a different aisle, appellant approached her.  Appellant told A.T. he was an undercover loss prevention officer, she had been caught stealing on one of the security cameras, and he needed to check her.  A.T. was confused because she had not been stealing and told appellant that.  Appellant told her to follow him to the back.  As A.T. was putting down the makeup she had been looking at, appellant told her she was too pretty to wear makeup, which made A.T. feel uncomfortable.  At first, A.T. told appellant she could not follow him because her sister was with her.  Once A.T.'s sister came into the aisle where appellant and A.T. were, A.T. explained to her sister what was going on, and her sister heard appellant tell A.T. she had to follow him to make sure she did not have any makeup in her pants.

A.T. and her sister ultimately followed appellant.  A.T. testified she followed appellant because she was scared because "they," purportedly Target, were accusing her of stealing and because "they" might call the police.  When the prosecutor asked her if

---

[2]  At some instances in the record, the day of the incident is referred to as September 16, 2019, and at others, September 17, 2019.  The information alleges the incident took place "on or about September 17, 2019."

she was still worried he would call the police on her as she was following him, she responded, "I was just scared that my parents were gonna get me in trouble." She did not know what would happen if she did not follow him. The thought of not following him did not cross her mind; she just followed him because she thought she was going to get in "big trouble."

Though A.T. thought appellant was going to take them to a back room where the security cameras were, appellant took them into the women's restroom. Appellant walked into the restroom first and proceeded to go into one of the small stalls. A.T. followed appellant into the restroom but did not follow him inside the stall; she stood just outside it with her sister. When appellant walked into the stall, A.T. felt scared she was going to get into trouble with her parents or that "something bad was gonna to happen" to her, like that appellant "was gonna do something to" her. At one point, A.T. began to suspect appellant was not an undercover officer because she could smell alcohol on him. She did not say anything because she was feeling uncomfortable and confused as to why she was in the restroom. She testified she followed him into the restroom despite smelling the alcohol "[b]ecause [she] really thought he was a[n] undercover cop and [she] didn't want to get in trouble." She thought if she did not follow him into the restroom, "they [would] call the cops on [her]" and she would get "locked up." When the prosecutor asked if she was worried about being arrested, she responded, "Yeah."

While in the restroom, A.T.'s sister asked appellant if a female loss prevention officer could come, and appellant told her he was the only undercover officer working at the time. Appellant was stuttering and gestured for A.T. to lift up her shirt. A.T.'s sister lifted A.T.'s shirt up to show appellant that A.T. had not stolen anything, revealing her bare stomach, including her belly button. Appellant then started patting A.T. down. According to A.T., appellant touched her sides from her ribs down to around her waist with both hands. He then touched the front of her thighs up and down three or four times. He came close to touching her vagina with his thumbs, but A.T. moved back, and

4.

appellant stopped. Appellant then apologized for the "misunderstanding" and that it "was nothing racist" and walked away. A.T. left the restroom and saw appellant leave the store rather than go talk to the store manager and told her sister what she had seen. A.T. and her sister then told the store manager and the police were called.

Appellant was not employed by Target at the time of the incident.

**Defense Evidence**

Appellant's ex-wife Kaylyn Thomas testified on his behalf. She was a county patients' rights advocate for Santa Barbara County Mental Health and formerly an alcohol and drug specialist and mental health case worker. She had known appellant for 20 years and was married to him for 17 years until they got divorced in 2017 or 2018. During the time Thomas knew him, appellant struggled "continuously" with alcohol. He had exhibited erratic behavior while drinking and "acted like an idiot." He experienced blackouts which she described as memory loss that happens when a person has been drinking to the point where the brain can no longer tolerate the alcohol and a "switch [is] turned off." The body continues to function but the person will not remember the events that occurred during the blackout. Based on her training and her personal observations, she opined appellant was a late stage alcoholic meaning that when he starts drinking he cannot stop.

Thomas had never seen appellant be sexually inappropriate towards a teenage girl. She had seen him around her teenage sons' girlfriends, one of whom lived with them for a period. Thomas had "a low tolerance for perverts" and had "a pretty good radar for it." She only knew appellant to be respectful toward women.

Appellant testified on his own behalf. He stated he had never, prior to the present case, been accused of molesting a child. He had had a problem with alcohol throughout his life. He started drinking when he was 14 years old and started drinking more when he joined the Marines at the age of 17. He agreed with Thomas's testimony regarding his drinking and began drinking more heavily after their divorce. He would typically start

drinking when he woke up and would drink a quart and a half of whiskey and a six-pack of beer a day at a minimum.

Appellant did not have a clear memory of the day of the incident. Appellant testified at that time he was living in a hotel and considered himself homeless. That day, he went to the liquor store and then took the bus to the mall. He remembers going to Target to look at some pants. While there, he saw A.T. put something in her waistband. He told her he was from loss prevention and either asked her if she was stealing or told her he saw her stealing. He did this because he had been taught at a young age to steal and had "always had that affliction of stealing things I don't need." He thought he could help A.T. by approaching her. In A.T. he saw "someone like [himself] that thought they could do whatever they wanted." He took her into the restroom because he "wanted to scare her a little bit." He did not recall "patting down anybody" but just "swooped down the outside of her legs on the outside of her pants … [and] that was it." At that point he realized he was "in over [his] head and [he] had taken it too far." When asked if he was trying to sexually gratify himself by touching A.T., he responded, "Um, I don't go out with children. No." He did not realize how young she was and thought she was an adult, in her 20's or "middle aged." He admitted that he was convicted of a misdemeanor crime of moral turpitude in 2016.

## DISCUSSION

### I. People's Special Instruction #1

Appellant contends the court erred by instructing the jury with prosecution-requested "Special Instruction #1" regarding the force or fear element of kidnapping. We disagree.

#### A. *Relevant Background*

The court instructed the jury on kidnapping with the pattern instruction, CALCRIM No. 1215. Pursuant to that instruction, the jury was instructed that to prove appellant was guilty of kidnapping the People must prove:

6.

"1.     The defendant took, held, or detained another person by using force or by instilling reasonable fear;

"2.     Using that force or fear, the defendant moved the other person or made the other person move a substantial distance;

"3.     The other person did not consent to the movement;

"AND

"4.     The defendant did not actually and reasonably believe that the other person consented to the movement."  (CALCRIM No. 1215.)

The jury was further instructed, pursuant to CALCRIM No. 1215, that "[t]he defendant is not guilty of kidnapping if he reasonably and actually believed that the other person consented to the movement" and/or "if the other person consented to go with the defendant."  The jury was instructed the People had the burden of proving beyond a reasonable doubt that the defendant did not reasonably and actually believe the other person consented and that the other person did not consent to go with the defendant.  The jury was also instructed that "Consent may be withdrawn.  If, at first, a person agreed to go with the defendant, that consent ended if the person changed his or her mind and no longer freely and voluntarily agreed to go with or be moved by the defendant."

The court instructed the jury over defense objection with the prosecution-requested instruction referred to as "Special Instruction #1."  The instruction was read after the standard kidnapping instruction, CALCRIM No. 1215, was provided to the jury on a separate page, and read as follows:

> "Movement of the victim accomplished by fraud alone is insufficient to constitute force or fear.  However, an implicit, but false, threat of arrest satisfies the force or fear element of kidnapping if the defendant's conduct or statements cause the victim to believe that unless the victim accompanies the defendant the victim will be forced to do so, and the victim's belief is objectively reasonable.  Substantial evidence of fear of injury is not required, just substantial evidence of fear the movement would be forced if the victim did not comply."

7.

**B.** *General Legal Principles and Standard of Review*

The trial court should instruct the jury on " 'all general principles of law relevant to the issues raised by the evidence.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 866.) This includes providing, upon request, "legally correct and factually warranted pinpoint instructions [that] elaborate and clarify other instructions." (*People v. Hughes* (2002) 27 Cal.4th 287, 362.) When considering whether to give a pinpoint instruction requested by a party, the court should consider whether the instruction incorrectly states the law, is argumentative, duplicative, potentially confusing, or is not supported by substantial evidence. (See *People v. Moon* (2005) 37 Cal.4th 1, 30.)

We review appellant's claim de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) This standard is applicable in "assessing whether instructions correctly state the law [citations], and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration." (*People v. Posey* (2004) 32 Cal.4th 193, 218.) " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Smithey* (1999) 20 Cal.4th 936, 987.) In reviewing an ambiguous jury instruction, we look to whether there was a reasonable likelihood the jury has applied the challenged instruction in a way that violates the Constitution. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72.)

**C.** **Analysis**

Appellant contends the court erred by giving Special Instruction #1 because it was not supported by the cases—*People v. Majors* (2004) 33 Cal.4th 321 (*Majors*) and *People v. Montalvo* (2019) 36 Cal.App.5th 597 (*Montalvo*)[3]—from which its language

---

[3]    As appellant points out, following the prosecutor's case-in-chief, he moved for a judgment of acquittal pursuant to section 1118.1 based partially on the assertion he did not use force or fear for the purpose of moving A.T. The prosecutor, in opposing the motion, argued *Majors* and *Montalvo* supported the charges being submitted to the jury,

was derived, was unduly argumentative, and lowered the prosecution's burden of proof. As we will explain, we reject appellant's arguments and conclude the court did not err by instructing the jury with Special Instruction #1.

First, the instruction was a correct statement of law. The first sentence of the instruction—"Movement of the victim accomplished by fraud alone is insufficient to constitute force or fear"—is a paraphrase from *Majors* and is well-established kidnapping jurisprudence. (*Majors*, *supra*, 33 Cal.4th at p. 327 ["In contrast to the use of force or fear to compel asportation, 'asportation by fraud alone does not constitute general kidnapping in California.' "].) The second sentence of the instruction—"However, an implicit, but false, threat of arrest satisfies the force or fear element of kidnapping if the defendant's conduct or statements cause the victim to believe that unless the victim accompanies the defendant the victim will be forced to do so, and the victim's belief is objectively reasonable"—is nearly a direct quote from *Majors*. (*Id.* at p. 331 ["We therefore conclude an implicit threat of arrest satisfies the force or fear element of § 207(a) kidnapping if the defendant's conduct or statements cause the victim to believe that unless the victim accompanies the defendant the victim will be forced to do so, and the victim's belief is objectively reasonable."].) The third sentence of the instruction— "Substantial evidence of fear of injury is not required, just substantial evidence of fear the movement would be forced if the victim did not comply"—appears to come from *Montalvo*, wherein the Court of Appeal, in distinguishing *Majors* from the robbery case before it, noted "the *Majors* court did not hold that there was substantial evidence of fear of injury, only that there was substantial evidence of fear the movement would be forced if the victim did not comply." (*Montalvo*, *supra*, 36 Cal.App.5th at p. 616; see *Majors*, at p. 331 ["there was substantial evidence here of force or fear, i.e., that [the victim] entered [the] defendant's van under such implicit threat of arrest"].)

---

and the court agreed with the prosecution there was sufficient evidence of appellant's guilt and denied the motion.

9.

Appellant contends the instruction was inappropriate because *Majors* and *Montalvo* did not support the giving of the instruction; *Majors*, because it was a sufficiency of the evidence case which had factual distinctions from the present case, and *Montalvo*, because it was a robbery case, whose discussion of *Majors* must be considered dicta. We do not find these factors precluded the court from giving Special Instruction #1.

In *Majors*, the defendant, while wearing sunglasses and plain clothes and standing in the street next to a van, stopped the victim while she was riding her bicycle by flashing a badge. (*Majors*, *supra*, 33 Cal.4th at p. 324.) He told the victim he was a security guard and received a call saying someone on a bicycle was suspected of a theft at a nearby store. (*Ibid*.) The victim showed the defendant the items in her backpack, her payment receipts, and her identification. (*Ibid*.) The defendant told her she would need to return with him to the store and speak to the security guard to resolve the issue; he told her to lock her bike up, took her backpack, and put it in the van. (*Ibid*.) After locking her bike, the victim asked the defendant to see his badge again, which said "security guard" on it; she testified she was afraid she would be arrested if she did not get into the van. (*Ibid*.) The defendant ultimately drove the victim to an isolated area of the mall, and when she tried to get out, he grabbed her and sexually assaulted her. (*Id*. at p. 325.) A divided Court of Appeal reversed the defendant's conviction for kidnapping and kidnapping for rape for insufficiency of the evidence regarding the force or fear element, finding the facts constituted a "classic case of asportation by fraud, not by force or fear." (*Id*. at p. 326.)

The California Supreme Court reversed the Court of Appeal. Our high court explained the question before it was "whether movement accomplished by the implicit but false threat of arrest satisfies the elements of force or fear in [a kidnapping offense], or whether such movement is simply asportation by fraud." (*Majors*, *supra*, 33 Cal.4th at p. 328.) The court concluded as we have already noted, "an implicit threat of arrest

10.

satisfies the force or fear element of section 207(a) kidnapping if the defendant's conduct or statements cause the victim to believe that unless the victim accompanies the defendant the victim will be forced to do so, and the victim's belief is objectively reasonable." (*Id*. at p. 331.) The court further concluded, independent of the aforementioned holding, substantial evidence supported the defendant's conviction because there was substantial evidence the victim subjectively feared arrest, and this belief was objectively reasonable because the defendant approached her, stopped her by holding up a badge, identified himself as a security guard, and indicated he stopped her for a law enforcement purpose. (*Majors*, at pp. 331–332.)

In *Montalvo*, a robbery case, the court rejected the prosecution's request for it to instruct the jury using language from *Majors*. (*Montalvo*, *supra*, 36 Cal.App.5th at pp. 615–616.) The *Montalvo* court, in rejecting the notion that *Majors* supported the People's theory the fear of injury element was satisfied, noted "the *Majors* court did not hold that there was substantial evidence of fear of injury, only that there was substantial evidence of fear the movement would be forced if the victim did not comply." (*Montalvo*, at p. 616.)

While we agree with the general proposition asserted by appellant that courts should be cautious of using quotes from cases as jury instructions (see *People v. Southard* (2021) 62 Cal.App.5th 424, 436), we find no error here. First, the statement from *Majors*, which is the source of the second sentence of Special Instruction #1, in context, was a neutral statement of substantive law. It was not, as appellant suggests, a comment on the specific facts before the *Majors* court. As respondent points out, Special Instruction #1's second sentence is included in the Bench Notes of CALCRIM No. 1215, under the heading "**RELATED ISSUES**," and the subheading "***Threat of Arrest***." We presume this comment was included to aid the court in cases where the jury has sought guidance concerning the role of an implicit threat of arrest or where the court otherwise exercises its discretion to instruct on the issue, as it did here. We agree with the Judicial

11.

Council that this statement of law is appropriate to share with the jury when factually warranted.

In the present case, the evidence factually supported the court's giving of the instruction. A.T. testified she believed appellant was a loss prevention officer, or, as stated in one part of her testimony, an "undercover cop" and she was fearful that, if she did not follow him, the police would be called, she would be "locked up," and that she might be arrested. Appellant contributed to this belief by expressly representing he was a loss prevention officer and had caught her stealing and that she needed to be checked for stolen merchandise. This constituted substantial evidence supporting the giving of the instruction on implicit, but false, threat of arrest.

While appellant contends *Montalvo* was an inappropriate source for the third sentence of the instruction, he points to no authority contradicting its general proposition: that the force or fear element of kidnapping does not require fear of injury, and that it can be satisfied by fear of forced movement. This appears to be simply a reiteration of the holding in *Majors*, where the court explained fear of forced movement satisfied the force or fear element and therefore is a correct statement of law.

Appellant next contends the instruction was "prejudicially argumentative." He contends the second sentence of the instruction "equat[ed] the alleged facts to the element, i.e., 'an implicit … threat of arrest' with the 'satisf[action]' of 'the force or fear element of kidnapping' " and "improperly 'invite[d] the jury' [citation] to draw inferences in the prosecution's favor on the element." We disagree with appellant's interpretation.

"A jury instruction is improperly argumentative if 'it would invite the jury to draw inferences favorable to [one party] from specified items of evidence on a disputed question of fact, and therefore properly belongs not in instructions, but in the arguments of counsel to the jury.' " (*People v. Santana* (2013) 56 Cal.4th 999, 1012; see *People v. Campos* (2007) 156 Cal.App.4th 1228, 1244 ["An instruction is argumentative when it

12.

recites facts drawn from the evidence in such a manner as to constitute argument to the jury in the guise of a statement of law"].)

We understand and appreciate appellant's concern with the wording of the first clause of the instruction's second sentence, suggesting evidence of threat of arrest "satisfies" an element of the crime of kidnapping, but appellant fails to consider the rest of the instruction, and in turn overstates the alleged potential argumentative effect. Appellant contends the jury was told the implicit threat of arrest "does" satisfy, rather than "could" satisfy. the force or fear element. Appellant's contention is not well-taken; the jury was informed it could only find implicit, but false, threat of arrest "satisfie[d]" the force or fear element "if" they made certain findings: (1) that appellant's conduct or statements caused A.T. to believe that unless she accompanied him, that she would be forced to do so, and (2) that A.T.'s belief was objectively reasonable. Thus, the implicit, but false, threat of arrest only "satisfied" the element of force or fear if the jury made findings that tracked the other elements of kidnapping to which they were instructed. In other words, if the jury found appellant's conduct or statements caused A.T. to believe that, unless she accompanied him, she would be forced to do so, and that her belief was objectively reasonable, as instructed in Special Instruction #1, they were necessarily finding appellant "took, held, or detained another person by … instilling reasonable fear," and used it to move the other person, as instructed in CALCRIM No. 1215. Special Instruction #1 sufficiently conveyed to the jury there was a factual dispute they needed to resolve with regard to whether appellant used force or fear to move A.T.

Further, contrary to appellant's suggestion, the instruction was neutral—it did not refer to specific pieces of evidence from the case but instead asked the jury to apply the general law, which we have established was correct and supported by the evidence—to the facts of the case. It would have been inappropriate, for example, for the instructions to read, "In making this determination, consider the fact that the defendant falsely identified himself as a loss prevention officer." (See, e.g., *People v. Wright* (1988)

13.

45 Cal.3d 1126, 1135 [holding an instruction was properly rejected as "argumentative" that would have advised the jury to "consider" various items of evidence, such as the fact that all the robbers wore masks and specific pieces of testimony in assessing the defendant's guilt].) In addition, the jury was instructed that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." (CALCRIM No. 200.) This allowed the jury to disregard the instruction entirely if it did not find there existed an implicit but false threat of arrest. For these reasons, we cannot say Special Instruction #1 took any matter away from the jury's consideration nor negated any elements of the offense. We conclude Special Instruction #1 was not improperly argumentative.

Finally, appellant contends that Special Instruction #1, particularly the third sentence, lowered the prosecution's burden of proof because it allowed the jury to find the force or fear element if it found "just" "substantial evidence," of fear of forced movement, which according to appellant, "falls far belo[w] the beyond a reasonable doubt standard." We agree with appellant the third sentence of the instruction is not ideally worded, but nonetheless conclude there is no reasonable likelihood the jury would have misapplied the instruction in a way that lowered the prosecution's burden of proof or otherwise violated the Constitution.

While the phrase "substantial evidence" is a legal term of art and is meaningful to judges and lawyers as a deferential standard which falls below the beyond-a-reasonable-doubt standard, we cannot say the average juror would place similar meaning onto the phrase. The jury was not given any legal definition of "substantial evidence" and was instructed that "[w]ords and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." (CALCRIM No. 200.) The only burden of proof the jury was instructed on was the beyond-a-reasonable-doubt standard.

14.

The jury was instructed with CALCRIM No. 220, which informed them they must find the People had proven appellant's guilt beyond a reasonable doubt and that if the evidence had not proven appellant's guilt beyond a reasonable doubt, the jury must find him not guilty. (CALCRIM No. 220.) The jury was also instructed to consider the instructions together. (CALCRIM No. 200.) In evaluating the jury instructions as a whole, it is not reasonably likely the jury applied a burden of proof lower than beyond a reasonable doubt.

For the reasons we have explained, we conclude the court did not err by instructing the jury with Special Instruction #1. We note we generally advise that a trial court should avoid modifying model instructions, particularly CALCRIM instructions. CALCRIM instructions are approved by the Judicial Council and maintained by an advisory committee, which is made up of bench officers, attorneys, and law school professors and " '[r]egularly reviews case law and statutes affecting jury instructions and makes recommendations to the council for updating, amending, and adding topics to the council's criminal jury instructions.' " (Levenson & Ricciardulli, Cal. Criminal Jury Instr. Companion Handbook (2022-2023) § 1:1.) Updates are made in response to public comments and concerns and impact of appellate opinions on areas of law addressed by CALCRIM. (*Ibid.*) They are thoroughly vetted in order to ensure the instructions not only accurately state the law but make it easily understandable to jurors.

## II.     Sufficiency of the Evidence to Support Kidnapping Conviction

Appellant also contends his kidnapping conviction is not supported by sufficient evidence, specifically as to the jury's finding he used force or fear. We disagree.

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Reversal on insufficiency of the

15.

evidence is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 639.) "Appellate inquiry into the sufficiency of the evidence 'does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation]. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In other words, 'it is the jury, not the appellate court which must be convinced of the defendant's guilt ….' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.)

As pertinent here, section 207, subdivision (a) defines "kidnapping" as "forcibly, or by any other means of instilling fear, steal[ing] or tak[ing] or hold[ing], detain[ing], or arrest[ing] any person in this state, and carr[ying] the person into another country, state, or county, or into another part of the same county" (§ 207, subd. (a)) or "asportation of the victim accomplished by force or instilling fear" (*People v. Alvarez* (2016) 246 Cal.App.4th 989, 1002).

As we have explained at length, *ante*, our high court has held that an implicit but false threat of arrest can satisfy the force or fear element. The *Majors* court explained, "the concepts of consent and force or fear with regard to kidnapping are inextricably intertwined. [Citation.] Thus, in those cases in which the movement was found to be by fraud alone, and not force or fear, the circumstances suggest the victim exercised free will in accompanying the perpetrator. By contrast, the threat of arrest carries with it the threat that one's compliance, if not otherwise forthcoming, will be physically forced. Thus, the use of force is implicit when arrest is threatened. … '[B]eing arrested' is not an 'esoteric' fear that stretches the meaning of the statute. This is true regardless of whether

16.

the defendant used deception regarding the fact of the threatened arrest. The compulsion, which is the gravamen of the kidnapping crime, remains present." (*Majors*, *supra*, 33 Cal.4th at p. 331.)

Here, appellant approached A.T., a 14-year-old girl who appeared to be shopping alone, and falsely represented he was a loss prevention officer and accused her of stealing. A.T. testified she did not give much thought to not following him, an expected and reasonable reaction, given he was an adult man representing himself as an authority figure with a law enforcement purpose and evidence A.T. had done something illegal. She went with him because she was afraid "they," presumably the store who appellant falsely represented to work for, would call the police and she might get arrested. In fact, she testified that when appellant first told him to follow her, she said no because she had her sister with her. The jury could reasonably infer from these facts that appellant instilled fear in A.T. that she was required to go with him or else be arrested; we have no trouble concluding she was compelled to follow him by this fear and did not consent to the movement. This is particularly true as it became clear that appellant was not taking her to a security office, but to the women's restroom. We acknowledge that it may be within the realm of possibility that a person in A.T.'s position would consent to follow a purported loss prevention officer into a security office for the purpose of resolving a theft accusation, but it is almost implausible that one would follow the same into the women's restroom. In fact, A.T. testified that once she was in the restroom, she was afraid, not only that she was going to get into "big trouble," but that appellant was going to "do something to" her. Thus, in addition to concluding the movement was caused by fear of arrest, the jury could reasonably infer at least part of the movement was caused by fear of physical harm or injury.

We reject appellant's argument that *Majors* is inapposite, and therefore the evidence was insufficient to support the force or fear finding, because A.T. feared future movement by the police rather than immediate forced movement by appellant. We

17.

decline to find this to be a meaningful distinction in evaluating the issue before us. *Majors* addressed a similar argument by the defendant in that case; the defendant argued the victim was "not 'afraid of some implicit threat of forcible arrest,' but rather 'got into the van to prove her innocence,' and was 'simply afraid of the possibility of going to jail.' " (*Majors*, *supra*, 33 Cal.4th at p. 332.) In response, the *Majors* court noted, "It is not obvious how these concepts of fear of 'implicit threat of forcible arrest' and fear of 'the possibility of going to jail' substantially differ." (*Ibid*.) Here, as A.T. testified she was afraid of going to jail, and the Supreme Court has equated fear of "implicit threat of forcible arrest" and "the possibility of going to jail," we do not find the distinction made by appellant to be a meaningful one. As we have stated, "compulsion" is the "gravamen" of kidnapping (*id*. at p. 331), and in the present case, as we have explained, substantial evidence supported that A.T. was compelled to move.

For the foregoing reasons, we conclude appellant's kidnapping conviction is supported by sufficient evidence.

### III. Alleged Double Conviction for Kidnapping (Count 1) and False Imprisonment (Count 2)

Appellant contends his convictions for both kidnapping and false imprisonment violated section 954's prohibition of multiple convictions based on the same offense because false imprisonment is a necessarily included offense to kidnapping. Respondent concedes error. We accept respondent's concession without further discussion and turn to the issue of remedy, on which the parties appear to disagree.

Appellant contends "[o]ne of the two convictions, sentences, and corresponding sets of fees must be vacated" and later suggests in his reply brief that we must remand the matter for the trial court to decide. Respondent disagrees contending the proper remedy is for this court to vacate appellant's false imprisonment conviction without need for remand. We agree with respondent. Appellant cites no authority supporting his proposition that remand on this ground is appropriate. Rather, in the cases he relies on to

support his general argument—*People v. Magana* (1991) 230 Cal.App.3d 1117 and *People v. Jandres* (2014) 226 Cal.App.4th 340—the courts did not remand the matter but simply vacated the false imprisonment convictions. (*Magana*, at p. 1121; *Jandres*, at p. 362.) We therefore conclude appellant's conviction in count 2 for false imprisonment must be vacated.

## IV. Alleged Improper Multiple Punishment for Two Misdemeanor Battery Convictions (Counts 5 & 6)

Appellant contends the court erred by imposing sentence on both misdemeanor battery convictions to which appellant pled no contest in exchange for the dismissal of counts 3 and 4 and concurrent sentencing. He contends the sentence for count 6 violated section 654's prohibition of multiple punishment because both counts 5 and 6 were based on "the one act of patting down" A.T.

Respondent contends appellant's claim is barred because he did not obtain a certificate of probable cause. Appellant acknowledges he did not obtain a certificate of probable cause and that his "no contest plea appears to have forfeited his challenge to the double conviction" but contends our review of this claim is nonetheless appropriate because he "never agreed to a specific sentence on the counts." We agree with respondent and find appellant's claim is barred by his failure to obtain a certificate of probable cause.

"A defendant may not appeal 'from a judgment of conviction upon a plea of guilty or nolo contendere,' unless he has obtained a certificate of probable cause." (*People v. Cuevas* (2008) 44 Cal.4th 374, 379; § 1237.5 ["No appeal shall be taken by the defendant from a judgment of conviction upon a plea of … nolo contendere … except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings[;] [and] [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal

with the clerk of the court"].)   However, "postplea claims, including sentencing issues, that do not challenge the validity of the plea" are exempt from this certificate requirement.  (*Cuevas*, at p. 379.)  Thus, "[f]or purposes of the certificate of probable cause requirement, the critical question is whether defendant's section 654 challenge to his sentence is in substance a challenge to the validity of his plea." (*Id*. at p. 381.)  Or, in contrast, is defendant's claim " 'merely that the trial court abused the discretion the parties intended it to exercise….' " (*Id*. at p. 379.)  A defendant may challenge normal sentencing discretion of the trial court without a certificate of probable cause.  (*People v. Buttram* (2003) 30 Cal.4th 773, 785.)

Section 654 provides in pertinent part:  "An act or omission that is punishable in different ways *by different provisions of law* may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (Italics added.)  Here, where appellant pled to two counts of the *same* provision of law, section 654 does not apply.  Thus, by sentencing appellant on two violations of section 243, subdivision (a), it did not proceed improperly under section 654.

For that reason, appellant's claim is not, in substance, a claim under section 654.  Rather, despite his assertion to the contrary, it is, in substance, a challenge to the double conviction and/or to the factual basis of his plea.  He is, in essence, arguing that the facts did not support his guilt of two violations of battery.  A challenge to the factual basis of a plea is considered a challenge to the validity of the plea; thus, a certificate of probable cause was required.  (*People v. Zuniga* (2014) 225 Cal.App.4th 1178, 1187.)[4]  We agree with respondent that appellant's claim is not cognizable because he did not obtain a certificate of probable cause.

---

[4]     Appellant's claim is likely not cognizable for another reason—there is no constitutional or statutory requirement for a court to satisfy itself that there is a factual basis for the plea before approving a misdemeanor plea, in contrast with a felony plea.  (*In re Gross* (1983) 33 Cal.3d 561, 567–568; see § 1192.5.)

## V. Assembly Bill 518

At the time of appellant's sentencing, former section 654, subdivision (a) required that a defendant who committed an act punishable by two or more provisions of law be punished under the provision that provided for the longest possible term. Assembly Bill 518 amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022.) "[S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

The parties agree appellant is entitled to the benefit of Assembly Bill 518. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 673 ["Assembly Bill No. 518 … applies retroactively to defendants … whose convictions were not yet final when the law became effective January 1, 2022"].) They disagree, however, as to whether remand is appropriate. We conclude it is not.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, as we are vacating appellant's conviction for false imprisonment, the remaining convictions are kidnapping, and two counts of misdemeanor battery, for which appellant was sentenced to 180 days in county jail, each to be served concurrently to his

prison sentence. First, the trial court did not apply section 654 to the misdemeanor counts and therefore implicitly found they were not part of the same indivisible course of conduct as the kidnapping count, a finding not challenged by appellant. It is improbable, upon remand, that the trial court would decide to stay any punishment pursuant to section 654. In any event, in pronouncing judgment, the trial court, while acknowledging mitigating circumstances, noted it "believe[ed] this is a serious crime and warrants prison time" and denied probation. In light of the court's comment, we conclude the court clearly indicated it would not decide to exercise its discretion to stay sentence on the kidnapping charge upon remand.

Appellant contends this comment "cannot be taken as dispositive" in determining whether remand is appropriate because the court may have meant "prison time" to mean generally time in custody, and therefore could still determine a six-month jail sentence is more appropriate. We disagree as, at the time of sentencing, the court had the option of granting probation and sentencing appellant to county jail as a condition. (See § 1203.1, subd. (a) ["The court, or judge thereof, in the order granting probation and as a condition thereof, may imprison the defendant in a county jail for a period not exceeding the maximum time fixed by law in the case"].) We find in light of the denial of probation, the court's specification that the case warranted "prison time" as opposed to "jail time" was significant.

Remand is unnecessary.

## VI.     Unauthorized Postconviction Criminal Protective Order

At sentencing, the prosecutor asked the court to impose a criminal protective order because A.T.'s family was "fearful that there may be contact with the defendant in the future." Defense counsel stated the defense "would submit and agree to that." The court stated it would "include that as part of the Court's order [appellant is] to have no contact with [A.T.] or her family." A criminal protective order was subsequently filed, indicating

under section 136.2, subdivision (i)(1), appellant was to have no contact with A.T. for a period of 10 years.

Appellant contends, and respondent agrees, that the criminal protective order was unauthorized. We accept respondent's concession. Section 136.2, subdivision (i)(1) provides that the court shall consider issuing an order restraining the defendant from any contact with the victim of a crime, when the defendant has been convicted of a domestic violence offense or one of several other enumerated crimes. None of the circumstances listed in section 136.2, subdivision (i)(1) apply to the present case, and thus the criminal protective order was unauthorized. (See *People v. Ponce* (2009) 173 Cal.App.4th 378, 383 [holding that an unauthorized restraining order with no statutory basis, which was not imposed as a condition of probation, must be reversed].) As such, the criminal protective order must be vacated.

## DISPOSITION

The judgment is modified by vacating appellant's conviction in count 2 for false imprisonment. The abstract of judgment shall be amended to reflect this modification and forwarded to the appropriate authorities. In addition, the trial court is directed to vacate the February 10, 2021 criminal protective order and forward the order vacating the criminal protective order to the appropriate authorities. The judgment is otherwise affirmed.

DE SANTOS, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.

23.